ROBINSON et al. v. DEWHURST et al.

(Circuit Court of Appeals, Fourth Circuit. May 28, 1895.)

No. 100.

1. EVIDENCE—DECLARATIONS OF DECEASED PERSONS—ANCIENT BOUNDARIES.
   In West Virginia, in an action of ejectment, the declaration of a deceased person, who had owned and lived upon a part of the land in controversy, made to his son while hunting over such land, long before the controversy had arisen, is competent to prove the location of a boundary of the land which was pointed out by the declarant at the time of making the declaration.

2. SAME—PRACTICE—SUFFICIENCY OF OBJECTION.
   An objection to deeds offered in evidence, on the ground that there is nothing in such deeds to identify, and show title in the plaintiff to the lands described in the declaration, is too general to sustain an exception to the evidence, where the deeds appear to show a legal title to lands claimed by the plaintiff, and the question of boundary has been passed on by a jury.

3. PRACTICE—QUESTIONS REVIEWABLE ON ERROR.
   Where the question of the boundaries of land in controversy in an action of ejectment has been passed upon by the jury, a claim that the verdict and judgment take from the defendant land outside the controversy,—and not described in the declaration, such claim having been presented by affidavit on a motion for a new trial, which has been denied,—does not present a question which can be reviewed on error by an appellate court.

4. PLEADING—FORM OF GENERAL ISSUE—WEST VIRGINIA CODE.
   Under the West Virginia Code (chapter 90, § 13, and chapter 134, § 3), a defendant cannot object to a judgment against him in an action of ejectment because he has entered a plea of "not guilty," simply, or because no similiter was filed before the impaneling of the jury, when the parties have gone to trial without objection to such informalities.

5. PRACTICE—QUESTION FIRST RAISED ON APPEAL.
   The objection that a certified copy of a patent, which has been received in evidence, bears no representation of a seal, cannot be first raised in an appellate court.

In Error to the Circuit Court of the United States for the District of West Virginia.

This was an action of ejectment by John S. Robinson and others against James B. Dewhurst and others. The plaintiffs recovered judgment in the circuit court. Defendants bring error. Affirmed.

John A. Hutchinson and B. M. Ambler, for plaintiffs in error.

George H. Umstead and Thomas J. Stealey, for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and SEYMOUR, District Judge.

SEYMOUR, District Judge.  This is an action in ejectment, and has been brought to this court by the defendants below, who are here plaintiffs in error.

The first error assigned is the refusal in the circuit court of a motion to exclude the evidence of the witness Morgan, which is set out in exception No. 1, in the following words:

"The plaintiffs, to sustain the issue upon their part, and after the jury was sworn, offered William Morgan as a witness, who testified that he was sixty years of age; that he had lived upon the 6,000-acre survey; that he was well acquainted with both the 21,000-acre and the 6,000-acre surveys of Woods, upon which the plaintiffs offered grants under which they claimed; that his father claimed to own a piece of land inside of the 6,000-acre tract, built a house upon it, and lived upon it for many years; that, when he was a boy about 16 years of age, he was out deer hunting with his father, or was watching deer licks in the woods; that his father is now dead; that when they were out hunting they passed by a white-oak corner, which his father pointed out to him as a corner of both the 21,000-acre and 6,000-acre surveys of Woods; that at the time the corner was down, but the tree was lying there close to the corner, and that one pointer, marked as a witness to the corner, was standing; that the corner was known and claimed by the old people living in the neighborhood as the corner of those surveys; that the plaintiffs claim that the corner described by the witness is at the point D on the verdict map filed in this cause, but the witness stated that he was not familiar with plats, and could not point out the corner himself on the plat; that his father told him that he was a chain carrier many years before, when the line from B to D was run, by a surveyor whose name he does not now recollect, which is known and called the 'Randolph line'; that his father told him that afterwards he was a chain carrier with a man by the name of Wyatt, when a surveyor by the name of Tucker run the same line."

The exception raises a question regarding that exception to the general rule excluding hearsay evidence which permits such evidence to be given, under certain limitations, in cases of ancient boundaries.  The exception, as it originated in the English courts, was confined to such boundaries as were matters of public concern, and was part of a larger exception to the rule.  On questions respecting the existence of manors; manorial customs; customs of mining in particular districts; a parochial modus; a boundary between counties, parishes, or manors; the limits of a town; a right of common; a prescriptive liability to repair bridges; the jurisdiction of certain courts,—matters in which the public is concerned, as having a community of interest, from residing in one neighborhood, or being entitled to the same privileges, or subject to the same liabilities,—common reputation and the declarations of deceased persons are received, if made, ante litem motam, by persons in a position to be properly cognizant of the facts.  But common reputation and declarations of deceased persons are not admissible to prove private boundaries.  In many of our states, including Virginia and West Virginia, the exception has been extended.  The reasons for this extension, as well as the limitations annexed to it, are very clearly stated by Judge Daniel of the supreme court of North Carolina, in Mendenhall v. Cassells, 3 Dev. & B. 51:

"In a country recently—and, of course, thinly—settled, and where the muniments of boundaries are neither so extensively known nor so permanent as in the country of our ancestors, we have, from necessity, departed somewhat from the English rule as to traditionary evidence.  We receive it in regard

to private boundaries, but we require that it should either have something definite, to which it can adhere, or that it should be supported by proof of correspondent enjoyment or acquiescence. A tree line water course may be shown to have been pointed out by persons of a bygone generation as the water course called for in an old deed or grant. A field, house, meadow, or wood may be shown to have been reputed the property of a particular man or family, or to have been claimed, occupied, or enjoyed as such."

The person whose declarations as to private boundaries are offered in evidence must be one who had knowledge of the matter; and the declarations must have been made while pointing out or making the boundary, or at least, must not be a mere recital of a past transaction. Hunnicutt v. Peyton, 102 U. S. 333–364. The declarant must be shown, or from lapse of time, with some certainty, be presumed, to be deceased, and he must not be liable to the bias of interest. But the fact that the declarant was the owner of an adjacent tract, and that the boundary pointed out was, or had been, one of his own boundaries, does not exclude his declaration. The rule, as laid down in Hutchinson's Land Titles, is as follows:

"The rule stands thus in Virginia: 'Evidence is admissible to prove declarations as to the identity of a particular corner, tree, or boundary made by a person who is dead, and had peculiar means of knowing the fact, as, for instance, the surveyor or chain carrier upon the original survey, or the owner of the tract, of an adjoining tract calling for the same boundary, and also tenants, processioners, and others whose interest or duty would lead them to diligent inquiry and accurate information as to the fact, always excluding those declarations obnoxious to the suspicion of bias from interest.' Harriman v. Brown, 8 Leigh, 697." Hutch. Land Titles, p. 283, § 525.

In Corbleys v. Ripley, 22 W. Va. 154, it is held that the declarations of a deceased person as to the courses of land owned by himself when the declarations were made, are admissible as evidence, if at the time he was not interested to misrepresent them, but that, if the circumstances and his situation at the time show that he had an interest to make false representations, the declarations are inadmissible. In the case at bar, Morgan, the declarant, pointed out to the witness, his son, the corner in controversy while hunting with him on the land. This was more than 40 years before the trial. The marked corner was in sight. This was evidently within the requirement that the declaration should have something definite to which it could adhere. It was not a narrative of a past transaction. The declarant was dead at the time of the trial. He had, as his son testifies, lived upon the 6,000-acre survey, and had claimed to own a piece of land inside of its boundaries, and built a house thereon, so that it appears that he must be presumed to have had knowledge concerning the matter. There is nothing that indicates that at the time of the declaration there was any controversy about the boundaries of the 2,000-acre or the 6,000-acre tracts. Although declarant lived upon the 6,000-acre tract, it does not appear that he had claimed ownership up to its boundaries. Had that, however, been the fact, and had the white-oak corner now in dispute been a corner of his own land, his declaration would not for that reason merely, be incompetent. Declarant was not seeking to point out his own corner. His declaration is not offered to prove the boundary of any one claiming under him. There is nothing

to indicate any reason why he should make a false statement with regard to it, or that it was in any way to his interest to fix upon that particular point as a corner of the two tracts. Such a declaration is not incompetent, though the corner pointed out may happen to be coincident with one of declarant's own boundaries. Bethea v. Byrd, 95 N. C. 309. It is not necessary to consider whether or not the declaration of the elder Morgan that he had been a chain carrier when the line B D was run is competent to prove that fact. It seems to be merely the recital of a past fact, and therefore not evidence of the fact said to have been asserted. But declarant's peculiar means of knowledge regarding the disputed boundaries, growing out of his residence, make his declaration competent, irrespectively of whether or not he assisted in running the line. That fact is therefore immaterial. If it were, the exception, which is to the refusal of the judge below to strike out Morgan's evidence as a whole, must be overruled, because the material part of the evidence which we have discussed was competent. The same remark applies to the evidence of Morgan with respect to the opinions of old people living in the neighborhood. The declaration of the elder Morgan, given by his son, is, in our opinion, clearly competent; and, that being the case, we hold that the circuit court did not err in refusing to exclude the evidence of the witness.

The second and third exceptions relate to the refusal of a new trial,—a matter clearly not reviewable. Van Stone v. Manuf'g Co., 142 U. S. 134, 12 Sup. Ct. 181; Railway Co. v. Heck, 102 U. S. 120.

The fourth assignment of error is the court's refusal to exclude from the jury "all and each of the several deeds and muniments of title that had been offered by the plaintiffs, and to which objection had been made, on the ground that there was nothing in the title papers and deeds so produced by the plaintiffs to identify, and to show title in the plaintiffs to the lands described in the declaration." The objection is too general to assist the court in discovering what is the alleged want of correspondence between the descriptions in the deeds and the declaration. The title papers appear to show a legal title granted by the state to lands claimed by plaintiffs, and mesne conveyances to plaintiffs. Whether the boundaries correspond with those set forth in the declaration was matter for evidence, and has been passed on by the jury.

The defendant also assigns as error that the verdict and judgment take from the defendant over 100 acres of land lying entirely outside of the controversy, and not described in the declaration, "as is shown by the affidavit of John L. Robinson." The affidavit in question was offered by defendants in support of their motion for a new trial, as appears in exception 3, and the new trial was refused. What were the lands in controversy, and described in the complaint, are questions depending upon evidence, and have been passed upon by the jury. As far as this court is concerned, the matter is concluded.

The plaintiff in error raises in the appellate court two points not taken below:

(1) That no issue was joined. The record shows that plaintiff in error, who was defendant below, entered a plea of not guilty at the December rules, 1891. The statute provides that, in ejectment, "the defendant shall plead the general issue only, which shall be that the defendant is not guilty of unlawfully withholding the premises claimed by the plaintiff in the declaration." Code W. Va. c. 90, § 13. The words "not guilty" constituted a plea, and tendered an issue. If wanting in formality, no objection was made by plaintiff, and defendant chose to go to trial on it. He cannot be heard to object here to the insufficiency of his plea. In the case of Hill v. Ruffner, 21 W. Va. 152, cited by counsel, neither a formal nor informal plea was entered. No similiter was filed before the impaneling of the jury; nor, as we are informed, is this customary. If, however, it were otherwise material, the want of form is cured by statute:

"No judgment or decree shall be stayed or reversed for the appearance of either party, being under the age of twenty-one years, by attorney, if the verdict (when there is one) or judgment, or decree be for him and not to his prejudice, or for want of warrant of attorney; or for want of a similiter or any misjoining of issue; or for any informality in the entry of the judgment or decree by the clerk; or for the omission of the name of any juror; or because it may not appear that the verdict was rendered by the number of jurors required by law; or for any defect, imperfection or omission in the pleadings which could not be regarded on demurrer; or for any other defect, imperfection or omission which might have been taken advantage of on a demurrer or answer, but was not so taken advantage of." Section 3, c. 134, p. 846, Code W. Va., 1891.

(2) That the grant from the commonwealth to Archibald Wood, offered in evidence, is void because it does not bear the seal of the state. The original grant was not produced, but, without objection to the manner of proof, a certified copy was introduced from the land office. This mode of proof seems to be authorized by the Code of West Virginia. If there be any objection to it, it should have been taken at the time. The objection now urged by counsel seems to be that no scroll representing a seal is annexed in the copy to the name of James Wood, the then governor, whose signature is appended to the patent. If the point had been taken in time, it might have been met by showing that the seal is never attached to the register, but is always in wax, with a fastening of ribbon passed through the seal before the impress is made. The point that no seal is affixed to the copy of the register is immaterial, and the certified copy states that James Wood, governor of the commonwealth of Virginia, not only set his hand to the patent, but caused the lesser seal of the commonwealth to be affixed to it on the 25th day of May, 1797, the date of the issuance of the grant. It is to be presumed that this statement is true, and that the grant bears the seal. This question is so evidently one which cannot be originated in an appellate court as to require no discussion. We can find no error, and the judgment of the circuit court is affirmed, with costs.