## PRICHARD v. BUDD et al.

(Circuit Court of Appeals, Fourth Circuit. November 10, 1896.)

No. 167.

1. CONTRACTS—ASSIGNMENT—AGENCY—UNDISCLOSED PRINCIPAL.

Where one party to a contract stipulates therein that he will not assign the same without the consent of the other, this does not prevent an undisclosed third party, for whom he acted as agent in making the contract and in carrying on the work provided for therein, from maintaining an action upon it.

2. BREACH OF CONTRACT—ASSUMPSIT.

Where, under a contract with the owner of certain land to convert trees thereon into railroad ties, and sell them, and to pay for them after sale, the ties were manufactured and removed from the land, and, before the time in which they were to be sold had expired, the owner of the land seized and sold them, and appropriated the money to his own use, *held*, that assumpsit would lie to compel him to account therefor.

3. APPEAL—ASSIGNMENT OF ERROR.

The circuit court of appeals will not consider assignments of error relating to the giving or refusing of instructions unless they set out fully the parts of the charge referred to, according to rule 11 (11 C. C. A. cii., 47 Fed. vi.).

4. SAME—REVIEW OF ACTION OF TRIAL COURT.

In the United States courts the refusal of the trial judge to set aside a verdict or grant a new trial is not subject to review.

5. SAME—BILL OF EXCEPTIONS—EVIDENCE.

It is not error for a federal court to certify in a bill of exceptions merely what the evidence tended to prove, instead of setting it out in full. Railway Co. v. Ives, 12 Sup. Ct. 679, 144 U. S. 408, and Lees v. U. S., 14 Sup. Ct. 163, 150 U. S. 476, followed.

6. SAME.

The practice and rules in the circuit courts embracing the preparation, settling, and signing of bills of exception are not within the "practice and forms and modes of proceeding" required by Rev. St. § 914, to conform as near as may be to those existing in like causes in the courts of record of the state.

In Error to the Circuit Court of the United States for the District of West Virginia.

E. W. Wilson, for plaintiff in error.

George D. Price (Campbell & Holt, on the brief), for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and HUGHES, District Judge.

GOFF, Circuit Judge. R. P. Budd and Mathias J. Forbus, citizens of the state of Ohio, doing business under the firm name of Budd & Forbus, on the 21st day of August, 1894, brought this action of trespass on the case in assumpsit, in the circuit court of the United States for the district of West Virginia, at Charleston, against B. J. Prichard, a citizen of that district. The declaration contains the common counts for goods, merchandise, and railroad ties sold and delivered, for work and labor performed, for money lent, for money paid by plaintiff for use of defendant, for money had and received by defendant for use of the plaintiff, and for

money due on account stated, and also two special counts. The defendant below demurred to the declaration, and to each count thereof, which demurrer was overruled; and the defendant then pleaded non assumpsit, on which plea issue was joined, and he also tendered seven special pleas, to the filing of which the plaintiffs objected, and the court sustained said objections as to all of said pleas, except the third, as to which the objection was overruled, and on which issue was joined. The case was then tried by a jury, which returned a verdict in favor of the plaintiffs for the sum of $1,425.75. The defendant moved the court to set aside this verdict, and grant him a new trial, which motion was overruled, and a judgment was entered for said sum, with interest and costs, against the defendant. During the trial, the defendant excepted to a number of the rulings, and to the charge of the court, and tendered his two several bills of exceptions, which were duly signed and sealed and made part of the record. The plaintiff below filed with his declaration, under the common counts, the bill of particulars called for by the West Virginia statute relating to such suits, and, in support of the special counts, introduced, with other evidence, the following agreement:

"This contract, made this 28th day of May, 1892, between B. J. Prichard, of the first part, and J. M. Hatfield, of the second part, witnesseth: That in consideration of the sum of $300 in hand paid by the party of the second part, and the payments of the sums of money hereinafter specified, and the performance of the other stipulations and agreements by the said Hatfield, hereinafter set out, the said B. J. Prichard has this day sold unto the said Hatfield all the timber that will make railroad ties, of the kinds hereinafter set out in what shall be known for the purposes of this contract as 'Specifications No. 1' and 'Specifications No. 2,' situate on what is known as the 'J. E. Smith Lands,' on the right fork of 12 Pole river, in Wayne county. W. Va., and deeded to said B. J. Prichard and Wm. Shannon by said Smith on the 20th day of Feb'y, 1889; and also all such timber as may be found in another tract of land adjoining the above, and containing 50 acres, and deeded to said Prichard by John Lauterbach on the 20th day of January, 1890; and reference is here made to each of said deeds for a more complete description of each of said tracts of land. Said Prichard excepting, however, from this sale all the following kinds of timber that may be found on said lands, viz.: Poplar, pine, hickory, chestnut oak, lynn, ash, and walnut, and any timber that may be standing on any inclosed lands, or that are corner or line trees of either of said tracts of land. Said Hatfield to take and work all the timber on said tracts of land that will make ties as follows:

"Specifications No. 1.

"Pole ties to be 7 inches thick, with 7 inch face, and 8 feet 6 inches long. Split ties to be 7 inches thick, with 8 inch face, and 8 feet 6 inches long.

"And all of said timber to be made into ties of the dimensions embraced in this specification, provided that all the ties that are made from said lands can be sold to the Norfolk & Western Railroad Company at any time during the continuance of this contract; but said Hatfield binds himself to make from said timber under this specification, if there be sufficient timber so to do, at least 30,000 railroad ties, and to pay said Prichard therefor the price of ten cents for each tie made under this specification that will be received by said railroad company, its agents or inspectors, during this contract under their present classification as a first-class tie, and five cents for each tie so made and accepted by said railroad company under its present classification as a second-class tie. And in the event that the said Hatfield cannot make a contract with the said N. & W. Railroad Company to take all the ties that can be made from the timber on the said lands, under specifications

above, then the excess of the 30,000 ties that may be made from said timber shall be made under the folowing specifications, and be paid for at the price of twelve cents for each tie so made and received by the purchasers of said excess, their agents or inspectors.

"Specifications No. 2.

"Pole ties: Length, 8 feet 6 inches; thickness, 7 inches; width, not less than 8 inches, nor more than 12 inches. Split ties: Length, 8 feet 6 inches; thickness, 7 inches; width, not less than 10 nor more than 12 inches.

"All the timber of said lands that will make ties under either of these specifications to be taken; and, in the event that the said Hatfield fails or refuses to take all of said timber, the numbers so left shall be paid for the same as if they had been taken and marketed, under specifications No. 1; and the number so left to be ascertained, if the same cannot be agreed upon by the parties to this contract, by two disinterested persons, one of whom is to be chosen by each of the parties hereto, and a third person to be chosen by them, if they do not agree. The payments for said ties made and marketed under either of said specifications to be as follows: All ties made, inspected, and received by the purchasers thereof, their agents or inspectors, to be paid for at the date of each inspection, which inspections and payments shall not be exceeding 30 days apart. Said Prichard to retain the ownership and property in said ties made, inspected, and received until the same are paid for as herein provided. All ties that may be made under this contract from timber in said lands that may be rejected by said purchasers on account of defects shall be the property of the parties hereto equally, and the price that same may be sold at so divided between them. And, should such rejected ties not be sold within a reasonable time, they are to become the property of said Prichard. It is expressly agreed and understood that the purchasers of the tie product of said lands shall, at the date of each inspection, furnish the said Prichard with the true number of the ties of each class inspected and received by him, and the number that may be rejected, for reasons herein stated. It is further agreed that this contract shall not be assigned by said Hatfield to any one for any purpose without the written consent of the said Prichard first indorsed thereon. Said Hatfield agrees to employ a good force of hands in the prosecution of said work, and keep a good force so employed, and to make and market all of said ties as expeditiously as practicable, but to have 12 months to complete said job. It is further stipulated that no part of the $300 paid on this contract is to be deducted from the payments on said ties until the 20th day of August, 1892, and then only such part as is proportioned to the whole number of ties to be taken, which is estimated at 40,000, and a like amount at each subsequent payment until the whole amount is taken out. Said Hatfield to have ingress and egress on said premises whenever necessary to prosecute said work, but said privileges to not extend to the inclosed portions of said premises so as to damage the crops or pasture lands on said premises.

"Signed in duplicate.					B. J. Prichard.
						"J. M. Hatfield."

The plaintiffs alleged in their declaration that the J. M. Hatfield who signed the said contract with the defendant, Prichard, was, when the same was executed, the undisclosed agent of the plaintiffs in that behalf and that they in fact executed said contract by and through the said Hatfield. The case is here on a writ of error, the first error assigned being that the court erred in overruling defendant's demurrer to the plaintiffs' declaration, and to each count thereof. There were in fact no grounds of demurrer so far as the common counts were concerned; and, in the argument before us, counsel properly abandoned the assignments referring to them, but insisted that the court erred in overruling the demurrer as to the two special counts, for the reason that the contract entered into by Prichard and Hatfield was not of such a character

as to permit Budd & Forbus as undisclosed third parties to substitute themselves as principals, and thereby secure a right of action on said contract; and that, if any right of action existed, it was in favor of Hatfield.

It is set forth in the contract itself that it should not be assigned by Hatfield to any one for any purpose whatever without the written consent of Prichard first had by indorsement thereon. This provision the parties certainly had a right to make, and it is one which the courts will enforce; but it seems to have been confounded by the plaintiff in error with the question raised by the plaintiffs in their declaration, and referred to by the court in his instructions to the jury, which was a question of agency, and not of assignment. Neither the right of Hatfield to assign said contract, nor the validity of any assignment of the same, was raised in any manner during the trial of this cause in the court below; and the argument that has been submitted on those points is not applicable to the questions now to be disposed of by this court. The plaintiffs below alleged in their pleading that, when the contract was executed, Hatfield was their agent, and that he acted for them not only in signing the contract, but in carrying on the work provided for by it. It is fair to presume that they proved the same by competent testimony, when we find that the jury returned a verdict in their favor, and that the court refused to set it aside. It is now well established that a principal can maintain an action on a written contract made by his agent in the agent's name, the contract not disclosing the name of the principal; and also that the plaintiff may show by parol evidence that such agent was in fact acting for him. It has also been held that the plaintiff may prove by parol that the other contracting party named in the contract was the agent of an undisclosed principal, in which state of the case the plaintiff could have his remedy against either at his election. Parol evidence will also be admitted in such cases to charge the principal, or enable him to sue in his own name; but the agent who has so bound himself will never be allowed to contradict the writing by proving that he contracted only as agent, and not as principal. New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. 381; Ford v. Williams, 21 How. 287; Baldwin v. Bank, 1 Wall. 234; Nash v. Towne, 5 Wall. 689; Higgins v. Senior, 8 Mees. & W. 844; Thomson v. Davenport, 9 Barn. & C. 78; 1 Pars. Cont. (5th Ed.) 64; Smith, Lead. Cas. (6th Am. Ed.) 421.

It is also insisted by plaintiff in error that the demurrer should have been sustained, for the reason that assumpsit was not the proper remedy, but, if there was cause of action, it should have been instituted by Hatfield for breach of the conditions of the contract. In order to dispose of this point, it will be necessary to consider the character of the contract, as well as of the special counts in the declaration. To enable us to ascertain the true meaning of the parties, and the real character of their agreement, it is necessary to look to the purpose desired to be attained by them in the contract executed. We think that, by the contract in suit, Prichard sold the property mentioned therein to Hatfield,

who was to cut the trees, and make them into ties, which he was to sell. The parties purchasing the same were to have them inspected, and advise Prichard of the same, after which Hatfield was to pay for them. That Prichard was to retain a lien on the property to the time that Hatfield sold it, but that Hatfield was empowered to pass the title to the purchaser, we think plain. It is beyond question that Hatfield was authorized to make and sell the ties, and after he had cut the trees, manufactured the ties, and removed them from Prichard's property, preparatory to selling them, certainly Prichard should not without notice, and without having proceeded under the contract for a violation thereof, have seized and sold them, and appropriated the money to his own use. By so doing, Hatfield was certainly prevented from carrying out his contract, for it must be remembered that Prichard so seized and sold the ties during the time stipulated in the contract in which Hatfield was to make and sell them. Under such circumstances, a court will hold that Prichard was acting for Hatfield, and will compel him to account to Hatfield for the money received from the sale of said property, over and above what was due him under the contract for the trees so taken and manufactured into ties by Hatfield. The special counts in the declaration allege the facts to be such as to make this rule of law applicable.

While it may be true, as claimed by the plaintiff in error, that the plaintiffs below or Hatfield himself might have proceeded in an action for damages for breach of the conditions of the contract, still, we think, it is also clear that it was proper for them to proceed in assumpsit, and that they can maintain such action, both upon the common and the special counts. The supreme court of the United States, in the case of Nash v. Towne, supra, used the following language:

"Assumpsit for money had and received is an equitable action to recover back money which the defendant, in justice, ought not to retain; and it may be said that it lies in most, if not all, cases where the defendant has moneys of the plaintiff which, ex equo et bono, he ought to refund. Counts for money had and received may be joined with special counts; and where, as in this case, the special counts are for damages for the nondelivery of goods, it is perfectly competent for the plaintiff, if the price was paid in money or money's worth, to prove the allegations of the special counts, and introduce evidence to support the common counts; and if it appears that the defendant refused to deliver the goods, and that he has converted the same to his own use, the plaintiff, at his election, may have damages for the nondelivery of the goods, or he may have judgment for the price paid and lawful interest."

The action of assumpsit is a liberal one, much more equitable in character than any other known to the practice of the courts of law.

"It lies," says Blackstone, "when one has received money belonging to another, without any valuable consideration given on the receiver's part; for the law construes this to be money had and received for the use of the owner only, and implies that the person so receiving promised and undertook to account for it to the true proprietor. And it is applicable to almost every case where a person has received money which in equity and good conscience he ought to refund. The action is equally beneficial to the defendant, because the defense to the claim, as well as the claim itself, is governed by the above principles."

Lord Mansfield said, in Moses v. Macferlan, 2 Burrows, 1010:

"It is the most favorable way in which he can be sued. He can be liable no further than the money he has received, and against that may go into every equitable defense upon the general issue. He may claim every equitable allowance, etc. In short, he may defend himself by everything which shows that the plaintiff ex equo et bono is not entitled to the whole of his demand, or any part of it."

It may not be out of place to remark here that the defendant below claimed, in effect, that he had not delivered the ties to Hatfield; in other words, that they were to remain his property until they were paid for by Hatfield. If that be true, then, as Hatfield had expended his money and labor in manufacturing and removing them, and they were taken and sold by Prichard on account of any supposed indebtedness to him concerning them, then surely, after the satisfaction of such indebtedness, the sum remaining should have been paid by Prichard to Hatfield. And it will also be proper to remark that it appears from the record that the defendant below tendered with his pleas, and filed with the approval of the court, an account of set-offs (thereby availing himself of the equitable defense we have just alluded to), in which he claimed from the plaintiffs below large sums of money on account of the timber left on the lands mentioned in the declaration, from which cross-ties could have been made, as well as for stumpage on the ties actually made and removed. We think the court below properly overruled the demurrer.

The next assignment of error relates to the action of the court in sustaining the plaintiffs' objections to the filing of the six special pleas tendered by the defendant. If the demurrer was properly overruled, then the court did not err in rejecting the said special pleas, for they, in effect, simply raised in another manner some of the questions that were presented to and decided by the court when such demurrer was disposed of.

The assignments of error next relied upon refer to the court's charge to the jury, in giving the instructions asked for by the plaintiffs, and in refusing to give the instructions as prayed for by the defendant. Rule 11 of this court (11 C. C. A. cii., 47 Fed. vi.) requires that, "when the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused." So far as the assignments of error relating to the charge of the court are concerned, there has been no effort made to comply with the provision of the rule just mentioned; and no part of the instructions, either of those given or of those refused, are set out as required; and consequently we find ourselves unable to consider and pass upon the questions discussed by counsel relating to these assignments. We have repeatedly called attention to the importance of this rule, and pointed out the reasons existing for strictly observing it. It is not ambiguous, is easily understood, and means just what it says. We shall therefore, following the requirements of said rule, disregard the assignments relating to the court's charge.

It is insisted by plaintiff in error that the court below erred in refusing to set aside the verdict on the ground that it was contrary to the law and the evidence.　In the United States courts the refusal of the trial judge to set aside a verdict or grant a new trial is not subject to review.　Pomeroy v. Bank, 1 Wall. 592; Railroad Co. v. Horst, 93 U. S. 291; Kerr v. Clampitt, 95 U. S. 188; Newcomb v. Wood, 97 U. S. 583; Railway Co. v. Heck, 102 U. S. 120; Fishburn v. Railroad Co., 137 U. S. 60, 11 Sup. Ct. 8; Ayers v. Watson, 137 U. S. 584, 11 Sup. Ct. 201.　This court has in a number of cases reviewed the authorities upon this question, and stated that the ruling of the court below on a motion for a new trial is not reviewable here.　Electric Co. v. Dick, 8 U. S. App. 99, 3 C. C. A. 149, and 52 Fed. 379; Improvement Co. v. Frari, 8 U. S. App. 444, 7 C. C. A. 149, and 58 Fed. 171; Bridge Works v. Fields, 8 U. S. App. 449, 7 C. C. A. 152, and 58 Fed. 173; Robinson v. Dewhurst, 25 U. S. App. 345, 15 C. C. A. 466, and 68 Fed. 336.

The only remaining assignment of error is that relating to the action of the court in certifying in the bill of exceptions what the evidence tended to prove, and not in setting out all the evidence offered during the trial by the jury.　The supreme court of the United States has frequently held that it is only necessary to set out so much of the testimony as will present clearly the matters excepted to, and that to do more than this is to needlessly incumber the record.　That court, in Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 681, said:

"We should bear in mind, however, that it is not for this court to say that the entire evidence in the case is set forth in the bill of exceptions, for that would be to presume a direct violation of a settled rule of practice as regards bills of exceptions, viz. that a bill of exceptions should contain only so much of the evidence as may be necessary to explain the bearing of the rulings of the court upon matters of law, in reference to the questions in dispute between the parties to the case, and which may relate to exceptions noted at the trial.　A bill of exceptions should not include, nor, as a rule, does it include, all the evidence given on the trial upon questions about which there is no controversy, but which it is necessary to introduce as proof of the plaintiff's right to bring the action, or of other matters of like nature.　If such evidence be admitted without objection, and no point be made at the trial with respect to the matter it was intended to prove, we know of no rule of law which would require that even the substance of it should be embodied in a bill of exceptions subsequently taken.　On the contrary, to incumber the record with matter not material to any issue involved has been repeatedly condemned by this court as useless and improper.　Pennock v. Dialogue, 2 Pet. 1, 15; Johnston v. Jones, 1 Black, 209, 219, 220; Zeller's Lessee v. Eckert, 4 How. 289, 297."

Mr. Justice Brewer, speaking for the supreme court, in Lees v. U. S., 150 U. S. 476, 14 Sup. Ct. 165, says:

"It does not, however, follow that, because all rulings excepted to at the trial may be incorporated into one bill of exceptions, all the proceedings at the trial ought to be stated at length.　On the contrary, we frequently find all the testimony set out in such a bill when it can serve no useful purpose, and simply incumbers the record.　Only so much of the testimony or the proceedings as is necessary to present clearly the matters at law excepted to should be presented in a bill of exceptions.　If counsel would pay more attention to this, they would often save this court much unnecessary labor, and their clients much needless expense."

We think it is now well settled that the bill of exceptions should not contain all the evidence offered during the trial, but only so much thereof as may be necessary to explain the bearing of the rulings of the court upon the issues involved.

The insistence of counsel for the plaintiff in error that as, by the provision of section 9, c. 131, Code W. Va., the courts of that state are required in a bill of exceptions to certify all the evidence touching the questions to which the exceptions relate, that section 914, U. S. Rev. St., applies and makes the practice in the courts of the United States in that state conform to such law, has not our approval. The practice and rules of a state court do not apply to proceedings taken in a circuit court of the United States for the purpose of reviewing in an appellate court of the United States a judgment of such circuit court; and such practice and rules, embracing the preparation, settling, and signing of the bills of exceptions, it has been repeatedly held, are not within the "practice and forms and modes of proceeding" required by said section 914 of the Revised Statutes to conform "as near as may be" to those "existing at the time in like causes in the courts of record of the state." As to such matters, the courts of the United States are independent of any statute or practice prevailing in the courts of the state in which the trial is had. In re Chateaugay Iron Co., 128 U. S. 544, 9 Sup. Ct. 150; Missouri Pac. Ry. Co. v. Chicago & A. R. Co., 132 U. S. 191, 10 Sup. Ct. 65; Fishburn v. Railway Co., 137 U. S. 60, 11 Sup. Ct. 8. The form of, as well as the practice relating to, bills of exceptions in the circuit courts of the United States, was adopted soon after the passage of the judiciary act of 1789, by rules of court, made in pursuance of the seventeenth section of that act. The practice then adopted—that of the common law—has been uniformly followed to the present time.

The evidence in this case was conflicting in character, and the object of certifying what it tended to prove was to show the relevancy of the judge's charge, and his reason for refusing certain instructions he was asked to give, and not for the purpose of enabling this court to review the questions of fact passed upon by the jury, or the action of the court below in refusing to set the verdict aside. The assignment of error relating to this point is without merit.

The judgment of the court below is affirmed.