## McGREGOR v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1904.)

### No. 542.

1. CRIMINAL LAW—ASSIGNMENTS OF ERROR—SUFFICIENCY.

Assignments of error in a criminal case, based on the admission of evidence, which fail to set out the evidence so admitted, as required by rule 11 of the Circuit Court of Appeals (90 Fed. cxlvi, 31 C. C. A. cxlvi), will not be considered by such court.

2. INDICTMENT—MOTION TO QUASH—REVIEW OF RULING.

A motion to quash an indictment is addressed to the discretion of the court, and in the federal courts the refusal to quash will not be reviewed in an appellate court.

3. SAME—EVIDENCE BEFORE GRAND JURY—INVESTIGATION BY TRIAL COURT.

It is not the duty of a trial court, on a motion to quash an indictment, to investigate the character of the evidence taken by the grand jury, in order to ascertain if a portion of it was incompetent or illegal, or if it was insufficient to justify the finding of the indictment, and such matters should not be gone into unless in exceptional cases, where the ends of justice imperatively require it.

4. SAME—JOINDER OF OFFENSES.

Charges against the same defendants for conspiracy to defraud the United States, based on Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], and for receiving money from their alleged co-conspirator for aiding to procure a contract from the government, and for services rendered in relation to the same, based on sections 1781, 1782 [U. S. Comp. St. 1901, pp. 1212, 1213], defendants being clerks in a department, and such charges all relating to the same transaction, may properly be joined in different counts in the same indictment under Rev. St. § 1024 [U. S. Comp. St. 1901, p. 720].

5. SAME—REQUIRING ELECTION BETWEEN COUNTS.

Where the different counts of an indictment, while charging different offenses, all relate to the same transaction, so that the evidence offered to sustain one is also admissible under the others, the court may properly refuse to require the government to elect between them.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, §§ 444, 451, 452.

**6.** CRIMINAL LAW—RULING ON MOTION FOR ELECTION BETWEEN COUNTS—RE-
VIEW ON ERROR.

    A motion to require the government to elect between the counts in an
indictment is addressed to the discretion of the court, and the ruling
thereon is not reviewable on a writ of error in the federal courts.

**7.** CONSPIRACY TO DEFRAUD THE UNITED STATES—REQUISITES OF OFFENSE.

    It is not necessary, to sustain an indictment under Rev. St. § 5440 [U.
S. Comp. St. 1901, p. 3676], which makes it an offense to conspire "to
defraud the United States in any manner or for any purpose," that the
consummation of the conspiracy would have caused pecuniary loss to the
government, where the defendants are its officers or employés.

**8.** UNITED STATES—OFFENSES BY OFFICERS—CLERKS IN DEPARTMENTS.

    A clerk in one of the departments is subject to indictment under Rev.
St. § 1781, or section 1782 [U. S. Comp. St. 1901, pp. 1212, 1213], as an
"officer and agent" or an "officer and clerk" of the United States.

**9.** CONSPIRACY—INSTRUCTIONS—INTENT.

    Instructions with respect to the intent necessary to be found to warrant
a conviction of defendants on a charge of conspiracy to defraud the United
States, which charged, in effect, that, if defendants intended the conse-
quences which naturally and in fact resulted from their acts, and such
result was to defraud the government, they could not be acquitted because
they may not have thought the government would be defrauded, con-
sidered and approved.

In Error to the District Court of the United States for the District
of Maryland.

A. E. L. Leckie and William S. Bryan, Jr. (Charles A. Douglas, on
the brief), for plaintiff in error.

Charles J. Bonaparte and John C. Rose (Morris A. Soper, on the
brief), for defendant in error.

Before GOFF, Circuit Judge, and BRAWLEY and PURNELL,
District Judges.

GOFF, Circuit Judge. The grand jury of the United States for the
district of Maryland on the 25th day of June, 1903, found an indictment
containing 14 counts against the plaintiff in error and one Columbus
Ellsworth Upton. The first and second counts of the indictment were
drawn under section 5440 of the Revised Statutes of the United States
[U. S. Comp. St. 1901, p. 3676]. The first count charged the de-
fendants with conspiring with one Charles E. Smith to defraud the
United States. It was alleged in that count that said defendants were
clerks in the Post-Office Department of the United States, in the office
of the general superintendent of the free delivery system; that said
Smith, with whom they so conspired, was a dealer in leather goods in
Baltimore, and that he was, in furtherance of said conspiracy, to sub-
mit to the superintendent of the free delivery system a sample pouch,
convenient for the use of letter carriers, and offer to furnish pouches
like said sample in lots of 1,000 each, at 90 cents per pouch, the said
defendants and Smith then and there knowing that such price was
greatly in excess of the real value of said pouches, and greatly in excess
of the price at which the government could procure the same elsewhere.
And it was further set forth that the defendants were to use their influ-
ence and official positions to have such offer of Smith accepted, they to
conceal from the First Assistant Postmaster General, who by law was

the person authorized to accept such offer, the fact that such price was excessive, and then that said Smith, on the consummation of the sale and the receipt of the sum of 90 cents per pouch, was to pay said defendants 40 cents for each pouch so bought and paid for. In this count the three conspirators were charged, one or the other of them, with doing 28 overt acts in pursuance of the object of such conspiracy.

The second count, after stating the official positions of said defendants in character like as they were set forth in the first count, went on to charge that said Smith had theretofore furnished pouches to the government at the price of 90 cents each, which was greatly in excess of the real value of the pouches, and the price at which such pouches could have been purchased by the department, as defendants well knew, and the count then set forth the conspiracy to be that the defendants should use their official positions to secure additional orders for Smith, and that they should be paid by him 40 cents on each pouch for which additional orders should be given. This count designates 14 overt acts done by some of the three conspirators in furtherance of the object of the conspiracy, these acts being the same as 14 of the 28 set forth in the first count.

The counts of the indictment from 3 to 10, inclusive, were based upon section 1781 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1212]. The third count charged that the defendants, at Baltimore, on the 3d day of October, 1902, being officers and agents of the United States, took and received $2,000 from Charles E. Smith for procuring and aiding to procure for said Smith a contract from the Post-Office Department to furnish that department with 5,000 leather pouches at the price of 90 cents each. The fourth, fifth, and sixth counts, with the exception of the dates, were identical with the third. The seventh count charged that said Smith had offered the general superintendent of the free delivery system of the Post-Office Department of the United States government to furnish that department leather pouches for the use of letter carriers in lots of 1,000 at 90 cents each; that the defendants were officers and agents of the government, and that prior to the commission of the offense charged they had procured and aided to procure the First Assistant Postmaster General to accept said offer and contract with Smith for 5,000 of said pouches at the rate mentioned, and that on the 2d day of October, 1902, at Baltimore, the said defendants being then and there officers and agents of the government, did take and receive $2,000 from Smith for procuring and aiding to procure for him said contract. Except as to the dates, the eighth, ninth, and tenth counts are identical with the seventh.

From 11 to 14, inclusive, the counts are drawn under section 1782 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1213]. Count 11 charges that before the commission of the alleged offense the said Smith had offered to furnish the general superintendent of the free delivery system of the Post-Office Department of the United States leather pouches for the use of letter carriers in lots of 1,000 at 90 cents each; that the defendants were officers and clerks in the employ of said government, and that they had rendered certain services to Smith, in that they had procured and aided to procure the said department, through the First Assistant Postmaster General, to accept the

offer of said Smith for 5,000 of such pouches, and that afterwards, on the 22d day of October, 1902, at Baltimore, the defendants, officers and clerks as aforesaid, unlawfully did receive certain compensation, to wit, the sum of $2,000, then and there paid by Smith for their services so rendered. Except as to the dates mentioned, the twelfth, thirteenth, and fourteenth counts are identical with the eleventh.

When called upon to plead to the indictment, each of the defendants moved to quash it on the ground that inadmissible testimony had been considered by the grand jury. The motion to quash was overruled by the court, after which the defendants demurred to the indictment, and to each and every count thereof, which demurrer was overruled. The defendants then pleaded not guilty to each count, and also filed a special plea to each count. To the first and second counts the special pleas set up that the Post-Office Department had purchased from one Maurice Runkel pouches similar to those mentioned in said counts for 90 cents each, and that, if the pouches mentioned in the indictment had not been purchased from Smith at 90 cents, pouches no better would have been purchased from Runkel at 90 cents, and that the United States suffered no pecuniary loss by the pouches having been purchased from Smith instead of from Runkle. The special pleas to the other counts each set forth that the defendant McGregor was a third-class clerk in the Post-Office Department of the United States, and that he was not an official of the United States in the sense in which that term is used in the statute of the United States under which such counts of the indictment had been drawn. The United States demurred to said special pleas, and to each of them, and the court sustained such demurrer. The defendants then moved to quash the indictment, alleging as a reason therefor its duplicity, and this motion the court also overruled. They then moved that the government be required to elect on which count of the indictment it would proceed to trial, and this motion was overruled. The sections of the Revised Statutes before mentioned, under which the indictment was drawn, read as follows:

"Sec. 5440. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment, in the discretion of the court."

"Sec. 1781. Every member of Congress or any officer or agent of the government who, directly or indirectly, takes, receives, or agrees to receive, any money, property, or other valuable consideration whatever, from any person for procuring, or aiding to procure, any contract, office, or place, from the government or any department thereof, or from any officer of the United States, for any person whatever, or for giving any such contract, office, or place to any person whomsoever, and every person who, directly or indirectly, offers or agrees to give, or gives, or bestows any money, property, or other valuable consideration whatever, for the procuring or aiding to procure any such contract, office or place, and every member of Congress who, directly or indirectly, takes, receives, or agrees to receive any money, property, or other valuable consideration whatever after his election as such member, for his attention to, services, action, vote, or decision on any question, matter, cause, or proceeding which may then be pending, or may by law or under the Constitution be brought before him in his official capacity, or in his place as such member of Congress, shall be deemed guilty of misdemeanor, and shall

be imprisoned not more than two years and fined not more than ten thousand dollars. And any such contract or agreement may, at the option of the president, be declared absolutely null and void; and any member of Congress or officer convicted of a violation of this section, shall, moreover, be disqualified from holding any office of honor, profit, or trust under the government of the United States.

"Sec. 1782. No Senator, Representative, or Delegate, after his election and during his continuance in office, and no head of a department, or other officer or clerk in the employ of the government, shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered, or to be rendered, to any person, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter or thing in which the United States is a party, or directly or indirectly interested, before any department, court martial, bureau, officer, or any civil, military, or naval commission whatever. Every person offending against this section shall be deemed guilty of a misdemeanor, and shall be imprisoned not more than two years, and fined not more than ten thousand dollars, and shall, moreover, by conviction therefor, be rendered forever thereafter incapable of holding any office of honor, trust, or profit under the government of the United States."

A jury was then sworn to try the issues thus joined, and the testimony of a number of witnesses offered by the United States was heard, together with some documentary evidence. The defendants offered no evidence, but submitted to the court a large number of instructions, with the request that the same be given to the jury. A few were granted, but the greater portion of them were refused. Both of the defendants were found guilty, and each of them was sentenced by the court to pay a fine of $1,000 and to be imprisoned in the Maryland penitentiary for and during the term of two years.

The defendant McGregor has prosecuted this writ of error on 30 assignments of error. Of these assignments 1 and 2 have reference to the court's action on the motion to quash the indictment because of the alleged hearing of inadmissible testimony by the grand jury, and No. 6 concerns the court's refusal to quash because of the alleged duplicity of the indictment. Assignments 3, 4, 11, 12, 15, 16, and 17 concern the court's action in overruling the demurrer to the indictment, and No. 5 is because the court refused to require the government to elect on what counts it would proceed; assignments 9, 10, and 13 relate to the action of the court in sustaining the demurrer to defendants' special pleas, and assignment 23 is because of the instruction given to the jury during the argument before it made by defendants' counsel; assignments 7, 27, 28, 29, and 30 relate to the action of the court in admitting certain testimony over the objection of defendants, but as these assignments fail to quote the full substance of the evidence admitted, and in fact cite none of the testimony so admitted, they utterly ignore the provisions of Rule 11 of this court (90 Fed. cxlvi, 31 C. C. A. cxlvi), and therefore will not be further considered by us. 3 Desty, Fed. Pro. 1558; Prichard v. Budd et al., 76 Fed. 710, 22 C. C. A. 504; Newman v. Virginia T. & C. Steel & Iron Co., 80 Fed. 228, 25 C. C. A. 382.

Assignment 8 claims that the court erred in refusing to give the rejected prayers submitted by the plaintiff in error. To this action of the court we see no objection, as will appear from the conclusion we reach concerning the instructions given, which are in fact the counterpart of

those rejected. Assignments 14, 18, 19, 20, 21, 22, 24, 25, and 26 have reference to the construction given by the court to sections 1781 and 1782 of the Revised Statutes of the United States [U. S. Comp. St. 1901, pp. 1212, 1213], and to the ruling of the court concerning the sufficiency of the evidence to bring the plaintiff in error within the purview of said sections. These assignments are, in substance, disposed of by the construction we give the statutes mentioned, and therefore will not be again directly referred to.

We are of opinion that, so far as the motion to quash is concerned, that the court below followed the well-considered and well-settled rules applicable to criminal procedure, and that the motion was properly overruled. It is well to note the fact that a motion to quash is one addressed to the discretion of the court, and that in the courts of the United States, at least, the refusal to quash will not be reviewed in an appellate court. U. S. v. Rosenberg, 7 Wall. 580, 19 L. Ed. 263; Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709, 10 Ency. P. & P. 567, and cases cited.

Counsel for the plaintiff in error present with much earnestness and confidence their objections to the action of the court below in refusing to quash the indictment because of the hearing by the grand jury of what they allege to be illegal and inadmissible testimony. It is alleged in the motion to quash that a statement made by the plaintiff in error, after he had been duly sworn, during an examination conducted by inspectors of the Post-Office Department, previous to the institution of criminal proceedings, concerning the purchase by the government of the mail pouches delivered by Charles E. Smith in furtherance of the alleged conspiracy, was submitted to the consideration of the grand jury, and that the same constituted part of the evidence upon which the jury acted in returning the indictment. It is further alleged in said motion that certain letters, checks, and bank entries were submitted to said jury, and considered by it, and that no competent and legal evidence of any character was in fact presented to and considered by said jury upon which to base the indictment. This motion was simply an effort to revise the judgment of the grand jury, and was in fact an appeal from the jury to the court for the purpose of determining whether or not the jury acted upon sufficient proof in finding the indictment. We have not been favored by counsel with any authority justifying such a procedure as was asked for concerning this matter in the court below, and if any case exists where such a course has been followed we are unable to find it. We do not mean to say that there are not cases where indictments have been quashed because of the irregular action of the grand jury, the improper conduct of witnesses before it, and because of the illegal use of admissions and depositions made by the party accused. But those cases are not at all similar to the one now under consideration, and we do not deem it necessary to explain them, as they rest upon circumstances peculiar to themselves, and entirely foreign to the facts found in the record now under consideration. The statement made by the plaintiff in error, and said to have been submitted to the grand jury, was one authorized by the statutes of the United States, was taken before an official designated by law for that purpose, and it does not appear from the motion that,

in order to secure said statement, any threats were resorted to or any promises made, but it plainly appears that at the time it was so made no criminal proceedings had been instituted, nor had any one been charged with the offense, but that the officials of the department were then making a preliminary investigation, in order to locate the crime from the facts so found. It is doubtless true that grand juries frequently consider testimony that would be held inadmissible by a trial court, for such juries are not usually well informed concerning the rules of evidence, nor the rights and privileges of the parties whose alleged offenses they are examining into. Such incompetent evidence, if subsequently offered at the trial, would be excluded, or, if admitted, would by an appellate court be held to be error, and any judgment founded thereon would be reversed. In cases like this, where the record discloses that many witnesses were examined, and much documentary evidence considered by the grand jury, it is quite apparent that it would be subversive of our criminal procedure, and destructive of the rules formulated to promote the due administration of justice, to establish a practice under which indictments might be quashed because of the consideration by the grand jury of the improper testimony given by one witness among many, or the reading by such jury of a statement irregularly submitted to it, which may likely have had but little influence in the conclusion reached by the jury.

Admitting that the statement of the plaintiff in error referred to in his motion to quash was improperly considered by the grand jury, we could not say, in the light of the record of this case, that said jury did not nevertheless have before it a sufficiency of legal and pertinent testimony to warrant the returning of the indictment, as such record discloses the fact that 11 witnesses were duly sworn and examined concerning the offenses alleged in the several counts of the indictment. The proceedings before a grand jury should always be conducted in secret, and should not be made public, unless in those peculiar and rare instances in which the ends of justice imperatively require it; this case, in our opinion, not being of that class. We think that the authorities bearing upon this question do not sustain the contention of counsel for the plaintiff in error that it was the duty of the trial court to investigate the character of the evidence taken by the grand jury, in order to ascertain if a portion of it was incompetent, if a part of it was illegal, or if all of it was insufficient to justify the finding of the indictment. The Circuit Court of Appeals for the Second Circuit recently passed upon some of the questions involved in this motion to quash. See the case of Radford v. United States, 129 Fed. 49, 63 C. C. A. 491. We quote:

"It is assigned as error that the court denied a motion to quash the indictments, which was based on the proposition that the grand jury acted upon incompetent evidence of the essential facts on which the charge was predicated, it appearing that a clerk in the office of the county clerk of Erie county (whose office is in Buffalo) attended before the grand jury in Lockport, and testified that upon a search of the records made by him he found certain deeds, mortgages, and judgments on file. It would be a sufficient answer to this assignment to call attention to the well-settled rule that such a motion is ordinarily addressed to the discretion of the trial court. The reason for entertaining motions to quash on grounds such as that above indicated is well set out in U. S. v. Farrington (D. C.) 5 Fed. 343: 'No person should be sub-

jected to the expense, vexation, and contumely of a trial for a criminal offense unless the charge has been investigated, and a reasonable foundation laid for indictment or information.' After conviction this reason no longer exists, because an intelligent and impartial jury of his peers, after a careful investigation, at which he has been represented by counsel, with full power to cross-examine, to introduce evidence, to tell his own story if he so choose, and to plead his cause, has reached the conclusion not only that there was a reasonable foundation for the charge, but that the charge was true. 'The motion to quash was clearly determinable as a matter of discretion. It was preliminary in its character, and the denial of the motion could not finally decide any right of the defendant. The rule laid down by the elementary writers is that a motion to quash is directed to the sound discretion of the court, and, if refused, is not a proper subject of exception.' United States v. Rosenberg, 7 Wall. 580, 19 L. Ed. 263."

The insistence of the plaintiff in error that the action of the court below in overruling the motion to quash the indictment for reasons before stated deprived him of certain of his constitutional rights, is in our judgment without merit.

The motion to quash the indictment for alleged duplicity is based on the fact that some of the counts charged that the defendants conspired to defraud the United States, and that other of the counts charged that the defendants, being officers and agents, or officers and clerks, violated sections 1781 and 1782 of the Revised Statutes by receiving money from their alleged co-conspirator, Smith, for procuring, or aiding to procure, a contract mentioned in the counts relating to the conspiracy. All of the offenses alleged in the different counts of the indictment were for acts connected together and bearing directly upon the conspiracy charged in the indictment, and consequently, under section 1024 of the Revised Statutes [U. S. Comp. St. 1901, p. 720], should have been united in the same indictment. Logan v. United States, 144 U. S. 263, 295, 12 Sup. Ct. 617, 36 L. Ed. 429.

The action of the court below in refusing to require the United States to elect under which counts of the indictment the trial should proceed was without error. The offenses charged were, as has been shown, directly connected together, and it was quite apparent to the trial judge that any evidence offered to sustain one count was also admissible and relevant to the other counts of the indictment. Such motions are addressed to the discretion of the court, and are not reviewable on writ of error. Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208; Pierce v. United States, 160 U. S. 355, 16 Sup. Ct. 321, 40 L. Ed. 454.

The indictment was well drawn, and sufficient under the law, so it follows that the assignments of error relating to the court's action in overruling the demurrer to it as a whole and to its various counts cannot be sustained. In fact, counsel for the plaintiff in error do not seem to rely upon them, and it is quite clear that they were not well taken.

The special pleas to the first and second counts of the indictment, concerning which assignments 9, 10, and 13 relate, allege that the government had made purchases of pouches similar to those described in each of the said counts, at the price of 90 cents per pouch, from one Maurice Runkel, and aver that, if the pouches mentioned

in each of the said two counts had not been purchased from Charles E. Smith as therein alleged, others in equal number of no better grade or greater value would have been purchased of the said Maurice Runkel at the same price, so that the United States suffered no pecuniary or other loss or damages by reason of the said purchase having been made from Smith rather than from Runkel. The demurrer to the special pleas was properly sustained. To hold otherwise would require a strained—in fact, a false—construction of the statute under which the first and second counts of the indictment were framed. It may be true that no pecuniary loss would follow the consummation of the conspiracy, and still the result might be that the damage to the government would be serious and far-reaching. The language of the statute clearly contemplates that the loss or damage may be other than a pecuniary one susceptible of accurate calculation. The words "in any manner or for any purpose" are most comprehensive, and show that the intention of the lawmaking power was to have the statute as broad and as comprehensive as it could possibly be. It surely is a wrong and a great injury to the government when any officer or employé of one of its departments conspires with another to do an act the inevitable result of which will be to corrupt the efficiency and impair the usefulness of such department. To hold that such conduct would not be a fraud upon the government and a loss to it would be as reprehensible as such conduct itself. This statute has, in a number of well-considered cases, been given the construction placed upon it by the court below, and such construction has our approval. United States v. Bunting et al. (D. C.) 82 Fed. 883; United States v. Curley et al. (C. C.) 122 Fed. 738; Palmer v. Colloday, 18 App. D. C. 426; Tyner and Barrett v. United States, 23 App. D. C. 324.

The special pleas to the remaining counts of the indictment raise the question whether the plaintiff in error was such an employé of the government as is contemplated by the terms of sections 1781 and 1782 of the Revised Statutes. In a number of such counts the defendants are alleged to be "officers and agents" of the government, and in the residue they are averred to be "officers and clerks" in the employment of the government. The special pleas applicable to the counts drawn under sections 1781 and 1782 set forth that the plaintiff in error was a third-class clerk in the Post-Office Department of the United States, and was not an officer of the United States in the sense in which that term is used in the statute of the United States under which such counts had been framed. The contention of the plaintiff in error presented by these special pleas is without merit. The authorities cited in support of this contention relate principally to the construction of the state statutes, and, while interesting and instructive, are not applicable to the case we now consider. Each head of a department of the government is authorized to employ in his department a certain number of clerks of the several classes recognized by law, at such compensation as the Congress may from year to year appropriate, and these clerks, before they enter upon the discharge of their respective

duties, are required to take an oath, the terms of which show that they are about to commence to discharge the duties of the office to which they have been appointed. The plaintiff in error subscribed and swore to this oath, and entered upon the discharge of the duties of a clerk of the third class—a subordinate position, it is true, but nevertheless one clearly included within the legislation to which we have alluded. In United States v. Hartwell, 6 Wall. 385, 18 L. Ed. 830, the Supreme Court has disposed of this question. Under this decision the position held by the plaintiff in error in the Post-Office Department established the idea of "tenure, duration, emolument, and duties," and made him an officer of the government within the meaning of the legislation under which the said counts in the indictment were drawn. Concerning this question, see, also, the case of United States v. McCrory, 91 Fed. 295, 33 C. C. A. 515, and the cases therein cited.

We come now to the consideration of the assignment of error having reference to the special instructions of the court to the jury given during the argument made before the jury by counsel for the plaintiff in error. We find from the record that said counsel was contending in his argument that the evidence before the jury did not show that the defendants had intended to defraud the United States, as they might have thought that the government would suffer no loss by awarding the contract to Smith, because, if he had not furnished the pouches, Runkel would have furnished them at the same price; and that, if the defendants did not think they were defrauding the United States, they did not then have the corrupt motive, without which there could have been no intent to defraud; and that, while men like the judge on the bench, or counsel in the case, might know they were, under the circumstances set forth by the witnesses, defrauding the government, still men of the character and position of the defendants might not have so thought. It was during this argument and at this point that the court stated to counsel that he was making an improper argument, and gave to the jury the following instruction:

"The defendants are presumed to have intended the natural and necessary consequences of the acts they may be proved to have done with regard to obtaining the contract at an excessive price, and of obtaining a part of the excessive price when paid by the government; and if you find that the natural and necessary consequence of what they did was to defraud the United States, then they are presumed to have intended that result; and they cannot be acquitted on the conspiracy counts because they may not have thought their acts and the result of such acts to be a fraud on the government. Where the act intended to be accomplished is a fraud, it is the intent to do the criminal act which imparts to it the character of an offense."

Concerning this instruction counsel for the plaintiff in error insist that by it the jury were told that it was not necessary to find the criminal intent, the law being that in conspiracies the corrupt motive is an element of the intent; and they claim that this corrupt motive cannot exist in a conspiracy to defraud if the conspirators do not think that what they agree to do amounts to a fraud.

This instruction of the court must be considered in connection with the instructions that had been given to the jury before the commencement of the argument. We find that the jury had been

instructed that they could not find the defendants guilty on the conspiracy counts unless they were satisfied from the evidence beyond a reasonable doubt not only that the accused did the acts charged in the first and second counts, but also that they did the same with the intent to defraud the United States. The jury had also been instructed that it was their duty to determine whether or not there was a conspiracy to defraud the United States, as set out in the indictment, and that, if they found such a conspiracy to exist, their finding must be based solely upon the evidence in the case; that the existence of the conspiracy was a question of fact exclusively submitted for the jury to determine; that they must find from the evidence that the conspiracy was formed, and that it was formed for the purpose charged in the indictment, and that at least one of the overt acts charged was done for the purpose and with the intent to carry into effect the object of the conspiracy; that there must have been the guilty intention to do the illegal thing charged, and that the act done must have been done to carry that intention into effect; that the issues to be determined were whether the alleged conspiracy was entered into with an actual intent to defraud the United States, and whether any one or more of the parties to such conspiracy, after it had been entered into, did an overt act with the intent to effect such object; that the jury were instructed that they were the exclusive judges of the weight to be given to the evidence of each witness, and that as to the weight of the testimony they were not to be bound by anything that might have been said by the court. The record thus discloses that the jury were, we may say, repeatedly charged by the court that the actual intention to defraud was an essential element of the crime, without which no offense could have been committed, and that, unless such intention was found by the jury from the evidence, the defendants should be found not guilty. As the record makes the case, this additional instruction of the court was not intended to modify or set aside any of the instructions theretofore given, but was intended to explain to the jury a method provided by law by which the jury might, from the evidence, find whether or not such intention existed. It is well settled that the law presumes that every man intends the legitimate consequence of his own acts, and that such acts, when knowingly done, cannot be excused on the ground of innocent intent. In both civil and criminal cases the intent with which an act is done is inferred from the result of the act itself, and the law presumes that every man intends the legitimate consequence of his own acts. Agnew v. United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; McKnight v. United States, 111 Fed. 735, 49 C. C. A. 594. It is, we think, quite clear, when all of the instructions given by the court to the jury are taken into consideration, in connection with the testimony which renders them applicable, that the court, by the instruction complained of, did not give the jury reason to think that it was not necessary for them to find the criminal intent before they could convict the defendants. While it is true that the intent to commit the crime is the essence of the offense, it is also true that such intent may be found from

the circumstances attending the act, which may show conclusively that the party charged could not have been ignorant of the criminal nature of his conduct; and the court below, in giving this instruction, on which the plaintiff in error seems so confidently to rely, simply called attention to this well-established principle of the criminal law.

We conclude that the judgment below should be affirmed.