DILLARD v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 23, 1905.)

No. 1,182.

1. INDICTMENT—JOINDER OF COUNTS—FEDERAL STATUTE.
Counts charging a defendant with the forgery of Chinese duplicate certificates, with the uttering of such forged certificates, and with violating Rev. St. § 3169 [U. S. Comp. St. 1901, p. 2059], as an officer in the revenue service, by negligently and designedly permitting the commission of such offenses, may properly be joined in the same indictment, under Rev. St. § 1024 [U. S. Comp. St. 1901, p. 720], since they cover "acts or transactions connected together."

2. CRIMINAL LAW—WRIT OF ERROR—REVIEW—DISCRETION OF COURT.
The ruling on a motion to quash an indictment is discretionary, and ordinarily not assignable for error.

3. FORGERY—INDICTMENT—DESCRIPTION OF OFFENSE.
An indictment for forging and uttering Chinese duplicate certificates of residence, such as a collector is authorized to issue on proof of loss of the originals, need not aver that originals were issued or lost, nor to whom the duplicates were issued, where the certificates are described and the names of the Chinese persons to whom they purport to have been issued are given, and it is alleged that the persons to whom they were uttered were to the jurors unknown.

4. CRIMINAL LAW—CONDUCT OF TRIAL—DISCRETION OF COURT.
The refusal of the court, during the taking of testimony in a criminal case, to permit the presenting at that time of a motion to dismiss as to certain counts of the indictment, was a matter within its discretion, and is not ground for reversal, unless it is shown that prejudice resulted to defendant.

5. SAME—REVIEW OF INSTRUCTIONS—FAILURE TO EXCEPT.
Assignments of error in a criminal case, based on instructions given and the refusal to give instructions requested, cannot be considered, where the record fails to show that any exceptions were taken to the charge or the refusal to charge.

6. FORGERY—EVIDENCE.
Evidence admitted on the trial of a defendant for the forgery of Chinese duplicate certificates of residence held competent and material as tending to connect defendant with the offense charged.

7. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.
On the trial of a defendant for the forgery of Chinese duplicate certificates of residence, other forged and fraudulent certificates not mentioned in the indictment, but shown to be in the handwriting of defendant, were admissible on the question of intent.
[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 826, 830–832.]

8. WITNESSES—IMPEACHMENT—CONTRADICTORY STATEMENTS.
A witness cannot be impeached by showing contradictory statements made by him which are not relevant to any issue in the case.
[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, § 1224.]

·In Error to the District Court of the United States for the Northern District of California.

The plaintiff in error was charged with forging duplicate certificates of residence issued by the government of the United States, through a collector of internal revenue, to Chinese laborers entitled to be and remain in the United States, in place of original certificates lost or destroyed. Counts 1 to 5, inclusive, of the indictment, charge the forging of five of such official documents on five specified dates. Counts 6 to 10, inclusive, charge the uttering of the said five documents on the dates on which they were alleged to have been forged. Counts 11 to 15, inclusive, charge the plaintiff in error, as an officer of the United States, with negligently and designedly permitting five acts of violation of the law on said dates, against the provisions of section 3169 of the Revised Statutes. Counts 16 to 24, inclusive, charge the uttering of nine other forged and fraudulent duplicate certificates on nine specified dates. Counts 25 to 33, inclusive, charge nine offenses against section 3169, Rev. St. [U. S. Comp. St. 1901, p. 2059], in permitting these nine violations of the law on the dates on which the said nine documents were uttered. Plaintiff in error moved to quash the indictment, on the ground of misjoinder of counts. At the same time he demurred to the indictment, on the ground that none of the acts charged were offenses against the United States, and upon other grounds, including that of misjoinder. The motion to quash was overruled by the court. The demurrer was sustained as to counts 11 to 15, inclusive, and counts 25 to 33, inclusive. The plaintiff in error was convicted on counts 10, 17, 19, and 21, and was acquitted on the other counts which remained in the indictment.

Samuel M. Shortridge and T. C. West, for plaintiff in error.

Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error that the court overruled the motion to quash the indictment. · Section 1024, Rev. St. [U. S. Comp. St. 1901, p. 720], defines the circumstances under which counts may be joined in one indictment. It is:

"Where there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined."

The plaintiff in error, having submitted with his motion to quash his demurrer to the indictment for misjoinder, which demurrer was sustained as to certain counts, cannot now be heard to complain that the indictment was not quashed, upon the ground that those charges were originally included in it. There can be no doubt that the five counts charging forgery of Chinese duplicate certificates may be properly joined with the five counts charging their utterance. Nor is there ground for saying that the five counts charging plaintiff in error with committing the five acts of violation of the law on the same dates may not be joined with them. They are all "acts or transactions connected together" and are "acts of the same class of crimes or offenses." The trial court had the power to exercise its discretion concerning the motion to quash, or to require the prosecutor to elect as to which of the charges the defendant should be tried upon. Its ruling on a motion to

quash is ordinarily not assignable for error. Durland v. United States, 161 U. S. 306, 314, 16 Sup. Ct. 508, 40 L. Ed. 709; Logan v. United States, 144 U. S. 263, 282, 12 Sup. Ct. 617, 36 L. Ed. 429; United States v. Rosenberg, 7 Wall. 580, 19 L. Ed. 263.

As to the ruling of the court upon the demurrer on the ground of misjoinder, it is sufficient to point out that the indictment charges cognate crimes, and presents parts and phases of the same transactions. It is no objection to the joinder of charges in one indictment that the charges set forth offenses of different grades, and are framed under different sections of the statutes, and are attended with different penalties and different procedure. Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; Dolan v. United States (C. C. A.) 133 Fed. 440, 446; McGregor v. United States (C. C. A.) 134 Fed. 187.

It is urged that the demurrers to all the counts in the indictment should have been sustained, for the reason that they do not specify to whom the duplicate certificates were issued, or wherein the certificates were false and fraudulent, nor allege that original certificates of residence had been issued, in lieu of which the duplicates were issued, nor that the originals had been proven to be lost. The counts in each case charged that at the time and place specified the plaintiff in error did "unlawfully, wrongfully, knowingly, designedly, feloniously, and corruptly, and with intent to defraud, * * * utter, publish, and pass as true and genuine, to some person or persons to the grand jurors aforesaid unknown," and then described the instrument, and proceeded:

"And which said false and fraudulent duplicate certificate of residence was numbered (giving the number), and which said false and fraudulent duplicate certificate of residence then and there purported to have been issued by said John C. Lynch, as collector of internal revenue of the United States, in and for the First district of California, to one (naming the Chinaman), who was therein described as a Chinese laborer; and which said false and fraudulent duplicate certificate of residence, then and there purported to have been issued in lieu of original certificate of residence numbered (stating the number), on proof of loss of said original certificate of residence being filed with the collector of internal revenue of the United States in and for the First district of California."

Then followed a description of the certificate, in words and figures.

In order to charge the offense defined by the statute, it was not necessary to charge that there had been in fact an original certificate issued to the Chinese person named in the fraudulent duplicate, nor to allege that such original had been proven to be lost. The evil intended to be prevented by the statute might be accomplished as well where there had been no loss or proof of loss of an original certificate. Nor was it essential that the grand jury should have known to whom the plaintiff in error delivered the false certificate. It was sufficient to say that the actual delivery was to persons unknown to the grand jury (Durland v. United States, 161 U. S. 314, 16 Sup. Ct. 508, 40 L. Ed. 709), coupled with the averment that it purported to have been issued to a certain Chinese person named therein. We find no error in the ruling of the court on the demurrer.

The point is made that the trial court denied the plaintiff in error an opportunity to submit, at the close of the testimony for the government, his motion to dismiss as to certain counts. The record

shows that, when the prosecution rested, counsel for the plaintiff in error announced their desire to make a motion to dismiss as to certain counts, but stated that at that time they were not ready to present the motion, for the reason that they were not able to segregate the vast number of exhibits introduced in evidence. They then proceeded to submit testimony for the defense. A day later they asked leave to make the motion. The court ruled that the motion should be made at the conclusion of the testimony, and remarked:

"If there is any matter as to which you think there is no evidence at all in, you need introduce no evidence in regard to it."

At the conclusion of the testimony the motion was made to dismiss as to all the counts, on the ground that there was no evidence in the record to show that the certificates contemplated by Exclusion Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319], had ever been issued by the plaintiff in error. This motion was overruled. We discern no ground for saying that the court erred in denying permission to present the motion at the time when the offer was made. At that time a considerable portion of the evidence for the defense had been taken. It is argued that the refusal of the court to entertain the motion when it was first proposed to be made forced the plaintiff in error to go into his defense as to all the counts and permitted the defendant in error in rebuttal to fortify its case. It is a sufficient answer to this to say that the trial court was vested with discretion as to the order of proof and the conduct of the trial, and no prejudice to the plaintiff in error can be seen to have resulted from the refusal to entertain the motion at the time when it was first proposed.

The plaintiff in error presents numerous assignments of error as to portions of the charge to the jury and the refusal of the court to give certain requested instructions. We are without power to enter into a consideration of these questions, for the reason that the record shows that no exception whatever was taken either to the charge given or to the refusal of the court to give the requested instructions.

It is said that the court erred in admitting in evidence certain testimony of the witness Sam Bat Sam. He testified that he first came to the United States by way of Mexico; that at Deming he had three photographs taken and gave them to a white man, and a month later received from Toy Man Sing, of San Francisco, a duplicate certificate of residence, and he identified that certificate as the one which was presented to him by the district attorney. To the question whether Toy Man Sing sent him a letter, objection was made, and was overruled. The answer was:

"Yes, sir; he did, but I did not retain this letter. I cast it aside."

He further testified that he paid $100 for the certificate. He was then asked what were the instructions in Toy Man Sing's letter. The court permitted the question to be asked on the promise of the district attorney to connect the plaintiff in error with Toy Man Sing. But, when the witness said that the white man showed him a letter from Toy Man Sing "saying there was a black man," the court interposed, and the witness proceeded no further. It is urged that the evidence so admitted was incompetent and hurtful, and that no con-

nection was ever shown between the plaintiff in error and Toy Man Sing or Sam Bat Sam. But the evidence shows that the plaintiff in error was a deputy collector of internal revenue at San Francisco, and had the exclusive charge of the issuance of duplicate certificates of residence to Chinese, and that every forged or fraudulent certificate introduced in the case was in his handwriting and attested by his signature. One witness testified that shortly before the plaintiff in error left San Francisco Toy Man Sing came almost daily to the office of the collector, where he had conversations with the plaintiff in error; that he came there so often that it became suspicious; that he had seen the plaintiff in error at Toy Man Sing's place of business on three occasions during business hours of the day; and that one of these occasions was but a day or two before the plaintiff in error left. In view of that evidence we can see no error in the ruling of the court as to Sam Bat Sam's testimony. Three Chinese testified that they were not entitled to certificates, not having been within the United States at the time of registration; that they paid $100 each for the fraudulent certificates, all of which were shown to be in the handwriting of the plaintiff in error; and two of these witnesses dealt with Toy Man Sing, and sent him money in payment for the certificates. It was clearly proper to show that Toy Man Sing frequently visited the office of the plaintiff in error, and that the latter had visited his store in Chinatown. The testimony as to the contents of the letters of instructions from Toy Man Sing to Sam Bat Sam and Yee To You was by the court excluded from the evidence, and all the evidence concerning declarations and acts of Toy Man Sing with reference to Sam Bat Sam was struck out by the court.

Complaint is made that the departure of Toy Man Sing from San Francisco to China was termed flight by the prosecution, but the record does not justify that criticism. A witness was asked when was the last time he saw Toy Man Sing in the city, and answered that:

"It was in the month of June, 1902. I have never seen him since. He is not here. He is in China."

The point is made that there was error in admitting the testimony of the witness Thomas that Toy Man Sing called on several occasions at the office of the collector of internal revenue for the certificate of one Lung Duck, and in admitting documents in evidence relating to that certificate. If there were error in the admission of this evidence, it was cured at the close of the testimony in the case, when the court specifically struck it all out.

It is contended that the Ho Quang photograph found in the store of Toy Man Sing was improperly admitted in evidence, for the reason that it was evidence of an act of a co-conspirator after the conspiracy had come to an end. This contention cannot be sustained. The Ho Quang certificate was the subject of the twenty-fourth count of the indictment. That certificate, like the others, was in the handwriting of the plaintiff in error. The photograph on the certificate, which was the same as the photograph found in the store of Toy Man Sing, did not agree with the original photograph on the

certificate in lieu of which it purported to have been issued, and was not the photograph of the person described therein. Evidence had been adduced tending to connect Toy Man Sing with the plaintiff in error, and the fact that the photograph of Ho Quang was found in the store of Toy Man Sing, where the plaintiff in error had been seen shortly before the departure of Toy Man Sing from San Francisco, made the evidence competent and material. It was not in any sense evidence of an act of a co-conspirator after the termination of the conspiracy. It was an act which must have been done at the same time with other acts with which the plaintiff in error was charged.

Error is assigned to the admission of 27 other alleged forged and fraudulent certificates not mentioned in the indictment, and counsel for the plaintiff in error cite authorities which state the rule to be that evidence of the commission of other offenses not connected with the offense charged may not be admitted against the defendant. It is true that the prosecution cannot prove against a defendant any crime not alleged in the indictment, in aid of proof that he is guilty of the crime charged. But there are certain well-recognized exceptions to the rule, and one is that evidence of other crimes is competent to prove the specific crime charged, when it tends to show the intent. It is well settled that, in cases of alleged forgery of checks and other instruments, evidence is admissible to show that, at or near the time of the execution of the instrument alleged to have been forged or uttered, the defendant forged or uttered or had in his possession similar forged instruments. Wood v. United States, 16 Pet. 342. 10 L. Ed. 987; United States v. Snyder (C. C.) 14 Fed. 554; United States v. Kenney (C. C.) 90 Fed. 257; Packer v. United States, 106 Fed. 906, 46 C. C. A. 35; Commonwealth v. Russell, 156 Mass. 196, 30 N. E. 763. There was no error, therefore, in the admission of the other forged and fraudulent duplicate certificates.

It is contended that the court erred in admitting evidence to show that the signatures "John C. Lynch" in red ink and black ink on the duplicate certificates mentioned in counts 16 to 24, inclusive, were forgeries, for the reason that the indictment charges that said certificates are false and fraudulent, and sets out wherein they are false and fraudulent, and therefore the proof should have been limited to the allegations of the indictment. It is argued that, since the indictment did not charge that the certificates were forged, the plaintiff in error was not notified that the government would undertake to prove that they were forged by him. It is contended, further, that the duplicate certificates of residence admitted in evidence are not the duplicates contemplated by the statute, and are therefore incompetent to prove a violation of the act of May 5, 1892, for the reason that the original certificates are signed by O. M. Welburn, then the collector, or by one of his deputies, while the so-called duplicates are signed in the name of John C. Lynch. In other words, the argument is that the word "duplicate" in the statute is used as synonymous with the words "a true copy." Turning to the language of the indictment, we find that it charges in the several counts that the plaintiff in error did, with intent to defraud, unlawfully utter, publish, and

pass as true and genuine, a certain false and fraudulent duplicate certificate of residence, purporting to be what is commonly known and described as a duplicate certificate of residence, etc., and that the plaintiff in error well knew that said false and fraudulent certificate of residence was not a certificate of residence issued by the collector of internal revenue of the United States in and for the First district of California. The plaintiff in error being thus charged with knowledge that the fraudulent certificate was not issued by the collector, there can be no doubt that evidence was properly admitted to show that the signature attached to the same was not the true and genuine signature of the then collector, but was forged by himself; and this, irrespective of the fact that the indictment did not directly charge him with the forgery. Nor does the law require that the duplicate certificate shall be an exact copy of the original as to the signature of the collector. Act May 5, 1892, c. 60, § 7, 27 Stat. 26 [U. S. Comp. St. 1901, p. 1321], provides that the Secretary of the Treasury shall make such rules and regulations as may be necessary for the efficient execution of the act, and that he shall make such provisions that certificates may be procured in localities convenient to the applicants. Act May 5, 1892, c. 60, § 6, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], prescribes the manner of procuring duplicates by those who have lost the originals. The forms of the certificates were prescribed by the Secretary, and the duplicate certificates, under the rules and regulations, were properly signed by the collector, who was authorized to issue the same. They could not be signed by any other. They are none the less the duplicate certificates contemplated by the statute, notwithstanding the fact that the name of the collector on the duplicates may not be the name of the collector whose name appeared upon the original certificate and whose term of office had expired.

Error is assigned to the admission in evidence of certain correspondence which passed between the collector's office and certain officers of the government at El Paso, Texas, in regard to some of the duplicate certificates which were alleged to have been forged. There was, first, a letter to the collector from a Chinese inspector, inquiring as to the genuineness of the signature of John C. Lynch to the duplicate certificate issued to Yee To You. A photographic copy of the signature accompanied the letter. The letter was not brought to the attention of the collector, but the plaintiff in error answered it, signed the name of John C. Lynch to the answer, and stated therein that the signature inquired about was genuine. Following this was a letter from the assistant United States district attorney at El Paso to the collector, requesting him to send there the volume containing the original certificate. This letter was received by the collector, and he testified that he directed the plaintiff in error to answer it and comply with the request. This answer was prepared by the plaintiff in error, signed by the collector, and mailed. The collector testified that he directed the plaintiff in error to send the volume to El Paso, but that two weeks later he found it hidden away in the file room. This evidence was clearly competent to show

the guilty knowledge and purpose of the plaintiff in error, and there can be no question that it was properly admitted.

Error is assigned to what is designated improper conduct on the part of the district attorney, by which the plaintiff in error was deprived of a fair and impartial trial. This assignment refers in part to several offers of improper evidence on the part of the district attorney, which evidence was excluded by the court, and in part to certain language addressed by the district attorney to the plaintiff in error while the latter was upon the witness stand. It is not every proffer of improper testimony that will justify a charge of misconduct on the part of counsel. The only instance of improper conduct on the part of the district attorney which we find in the record occurred when the plaintiff in error had testified that the district attorney had taken good care that he should not have a chance to inspect certain documents concerning which he was being interrogated. To this the district attorney replied that the witness had deliberately falsified matters. The court very properly interposed, and said:

"You have no right to say that to a witness upon the stand, no matter whether he is the defendant or not."

No exception was taken to the language of the district attorney on this occasion, and no request was made to the court to instruct the jury in regard to the same. We think that the remarks of the court at the time sufficiently cured the error.

It is urged that the trial court erred in excluding testimony offered to impeach B. M. Thomas and John C. Lynch, witnesses for the government. On the cross-examination of Thomas he was asked the following question as to declarations made by him to the wife of the plaintiff in error: "And you said to her that you knew, and that Lynch knew, he (Lynch) had signed every one of these certificates, didn't you?" to which the witness replied, "I did not." When counsel for the plaintiff in error thereafter inquired of the wife of the plaintiff in error whether Thomas had made such declaration, an objection to the evidence was sustained by the court, on the ground that it was an attempt to impeach the witness Thomas on a collateral matter. He had not testified as to the signatures to the certificates or the handwriting thereof. He had testified that the body of the certificates was in the handwriting of the plaintiff in error, and that fact is not disputed. The evidence as to which the said witness was sought to be impeached was not relevant to any testimony of his as to any issue in the case; nor was the fact which was so sought to be proven a fact which would tend to discredit the witness by showing bias, hostile feeling, or corrupt motive. The general rule was therefore applicable. The test question is:

"Could the fact as to which the prior self-contradiction is predicated have been shown in evidence for any purpose independently of the self-contradiction?" Wigmore on Evidence, § 1020, and cases there cited.

These observations concerning the attempt to impeach the witness Thomas are applicable to the attempt to impeach Lynch, and we find no error in the rulings of the trial court in excluding the offered impeaching testimony.

Error is assigned to the language of the court concerning the examination of the witness Lynch after he had testified that the signatures of his name to the certificate were forgeries. He was asked by the district attorney to state what chief mark or feature of the signatures led him to so testify. No objection was made to the question, but the court said:

"I don't think, in a matter of that kind, you have any right to cross-examine your own witness. * * * A person knows his own signature, and he may not be able to describe the different characteristics of it."

We are precluded from reviewing these remarks of the court, for the reason that no objection was made, and no exception was reserved to them.

There are other assignments of error which we have carefully considered. We find no reversible error in any of them.

The judgment is affirmed.