### HILLEGASS v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. November 28, 1910.)

#### No. 1,366.

1. CRIMINAL LAW (§ 1149*)—APPEAL AND ERROR—REVIEW—RULING ON MOTION TO QUASH.

The general rule that a motion to quash an indictment is addressed to the discretion of the court and a refusal to grant it cannot be assigned as error, while subject to exception in some cases in the federal courts, will be followed where the motion is founded only on alleged defects appearing on the face of the indictment, since in such case the ruling could not finally determine any right of the defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3039; Dec. Dig. § 1149.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. INDICTMENT AND INFORMATION (§ 197*)—RULING ON DEMURRER.**

In the federal courts, the overruling of a demurrer to an indictment, where the defendant is allowed to plead over, is not properly assignable as error.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 636; Dec. Dig. § 197.*]

**3. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—AIDING OFFICER IN MISAPPLICATION OF FUNDS—INDICTMENT.**

An indictment for·aiding and abetting an officer of a national bank in the misapplication of its funds, in violation of Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), considered, and *held* sufficient.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 973; Dec. Dig. §. 257.*]

**4. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—TRIAL OF OFFENSES—EVIDENCE.**

Rulings of the trial court in admitting and excluding evidence in a prosecution for aiding and abetting an officer of a national bank in the misapplication of its funds considered, and *held* to contain no error.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

**5. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—TRIAL OF OFFENSES—INSTRUCTIONS.**

Instructions considered given on the trial of a prosecution for aiding and abetting an officer of a national bank in the misapplication of its funds, and *held* without error.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

De Witt C. Hillegass was convicted of a criminal offense, and brings error. Affirmed.

For opinion below, see 176 Fed. 444.

John McClintoch, Jr., for plaintiff in error.

J. Whitaker Thompson, U. S. Atty., and Walter C. Douglas, Jr., Asst. U. S. Atty.

Before BUFFINGTON and LANNING, Circuit *Judges, and CROSS, District Judge.

LANNING, Circuit Judge. The defendant, De Witt C. Hillegass, was convicted in the lower court under an indictment charging him with aiding and abetting the cashier of the Farmers' National Bank of Boyertown, Pa., in the misapplication of funds of the bank, contrary to the provisions of section 5209 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3497). Judgment having been pronounced against him, he now prosecutes this writ of error.

The first assignment of error is based on the refusal of the court to grant the defendant's motion to quash the indictment. A motion to quash is ordinarily addressed to the discretion of the court, and a refusal to grant it cannot generally be assigned for error. Logan v. United States, 144 U. S. 263, 282, 12 Sup. Ct. 617, 36 L. Ed. 429; Durland v. United States, 161 U. S. 306, 314, 16 Sup. Ct. 508, 40 L. Ed. 709; Endleman v. United States, 86 Fed. 456, 458, 30 C. C. A.

186; Radford v. United States, 129 Fed. 49, 51, 63 C. C. A. 491; Dillard v. United States, 141 Fed. 303, 305, 72 C. C. A. 451. Where the objection goes to the constitution of the jury, the old common-law practice, if the ground of objection was discovered before the finding of the bill, was to challenge the jurors objected to, and, if it was discovered after such finding, to file a plea in abatement. That rule is generally applicable in this country. Crowley v. United States, 194 U. S. 462, 24 Sup. Ct. 731, 48 L. Ed. 1075. The Supreme Court of the United States, when reviewing a criminal conviction in a state court, is bound by the settled law of the state that an objection to an indictment based on the constitution of the grand jury returning the indictment shall be made by plea in abatement, and not by motion to quash. Tarrance v. Florida, 188 U. S. 519, 23 Sup. Ct. 402, 47 L. Ed. 572. In the federal courts, however, where objections to indictments by indicted negroes have been made on the ground that negroes have been excluded from the grand juries because of their race or color, contrary to the provisions of the fourteenth amendment of the Constitution of the United States, motions to quash, accompanied by offers of proof of the facts alleged in the objections, are allowed as substitutes for pleas in abatement. Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; Charley Smith v. Mississippi, 162 U. S. 592, 16 Sup. Ct. 900, 40 L. Ed. 1082; Williams v. Mississippi, 170 U. S. 213, 18 Sup. Ct. 583, 42 L. Ed. 1012; Martin v. Texas, 200 U. S. 316, 26 Sup. Ct. 338, 50 L. Ed. 497. In United States v. Gale, 109 U. S. 65, 3 Sup. Ct. 1, 27 L. Ed. 857, it was said that, though the general rule as to the manner in which objection may be taken to the personnel of the grand jury is by challenge or by plea in abatement, in this country a motion to quash the indictment may be made instead of pleading specially in abatement, and in Carter v. Texas, 177 U. S. 442, 20 Sup. Ct. 687, 44 L. Ed. 839, it was said that, when the defendant has had no opportunity to challenge the grand jury which found the indictment against him, the objection to the constitution of the grand jury may be taken either by plea in abatement or motion to quash before pleading in bar.

But in the present case the motion to quash was founded wholly on the defects alleged to appear on the face of the indictment. The refusal to quash could not finally determine any right of the defendant. Where an indictment is on its face manifestly defective in substance, and not in mere form, the motion to quash will usually be granted. But the motion, even in such a case, is not granted ex debito justitiæ. It may be overruled, and the defendant be compelled to resort to his other remedies, such as demurrer, motion to direct a verdict, or motion in arrest of judgment. The first assignment of error is overruled.

The second assignment is based on an exception to the action of the trial court in overruling the defendant's demurrer to the indictment. At common law, where the indictment charged a felony, which was punishable with death, the defendant was allowed to plead over after his plea in abatement was found against him or after his demurrer was overruled, or even to demur and plead over at the same time.

This privilege was allowed in favorem vitæ, and did not formerly apply to cases where life was not in jeopardy. In misdemeanors no pleading over was allowed. In such cases, if the defendant's plea in abatement was found against him, or his demurrer was overruled, final judgment was entered against him. This was because by his plea in abatement he elected to stand on the defense made by it, and by his demurrer he admitted the facts pleaded in the indictment. 2 Hale's P. C. 257; The King v. Gibson, 8 East. 107; Reg. v. Faderman, 3 Car. & K. 353. Later cases allowed the same privilege in misdemeanors. The Queen v. Adams, 1 Car. & M. 299; Reg. v. Purchase, 1 Car. & M. 617. Mr. Bishop (2 Bish. Crim. Proc. § 784) says that "with us, in misdemeanor, the judgment against a defendant on his demurrer is final, unless he has leave to withdraw it or answer." The record of the present case shows that after the demurrer had been overruled the defendant was arraigned and pleaded "not guilty." The court, therefore, instead of entering final judgment on the demurrer, allowed the defendant to plead over. The court granted an exception to its action in overruling the demurrer, but, when the defendant pleaded "not guilty," the demurrer was, in legal effect, withdrawn from the record, and nothing remained upon which the exception could be founded. The overruling of a demurrer, like the overruling of a motion to quash, settles finally no question against the defendant, except where final judgment is entered on the demurrer. As a demurrer addresses itself to defects apparent on the face of the indictment, a ruling of the trial court on such defects may be had upon the trial by a motion to direct a verdict for the defendant, or, if the alleged defects be not mere defects or imperfections of form (Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720]), or defects which are cured by verdict, by a motion in arrest of judgment, for, generally, whatever is fatal on demurrer is equally so on a motion in arrest of judgment (2 Bish. Crim. Proc. § 1286). We understand this to be the correct practice except in those jurisdictions where by statute defects apparent on the face of an indictment are required to be taken by demurrer or motion to quash before pleading, in order to avoid a waiver thereof, and where, in overruling the demurrer or motion to quash, the defendant may enter an exception on the record on which, in case of subsequent conviction and final judgment against him, he may assign error. Congress has passed no such statute. There are cases in which federal appellate courts have considered assignments of error on the overruling of demurrers to indictments where defendants have been allowed to plead over and go to trial. Endleman v. United States, 86 Fed. 456, 458, 30 C. C. A. 186, McGregor v. United States, 134 Fed. 187, 194, 69 C..C. A. 477, and Dillard v. United States, 141 Fed. 303, 72 C. C. A. 451, are three of such cases. In them, however, the question now considered was not mooted.

In the present case there was a motion for a new trial. The first two reasons on which the motion was based were the refusal of the court to quash the indictment and the overruling of the demurrer. In his opinion on the motion the learned trial judge said:

"The reasons for which a new trial is now urged are 33 in number, the first 2 of which, however, are more properly questions to be considered on a motion in arrest of judgment, and, as they are filed in due time, they may be so considered in this case."

They were so considered, and the conclusion was that "the motion in arrest of judgment is overruled and a new trial refused." The second error assigned, however, is not that the court erred in overruling the demurrer and refusing to arrest the judgment, as was the case in Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, but merely that it erred in overruling the demurrer. Nevertheless, as under the eleventh rule of this court we may reverse for a plain error not assigned, and as the reasons on which the second assignment are based have been fully argued, we have examined them, and are of the opinion that the indictment was not demurrable for any of the reasons set forth, and that the motion in arrest of judgment was properly refused on the grounds stated in the opinion of the trial judge.

The third assignment is that the court erred in admitting certain evidence of the cashier of the bank. It was a part of the evidence designed to show that the board of directors of the bank had no knowledge prior to April 10, 1906, of the defendant's overdrafts. It was properly admitted.

The fourth assignment is that the court erred in admitting in evidence a statement, made in the presence of the witness, showing the amount of the defendant's overdrafts on April 11, 1906. When the statement was handed to the witness as a paper from which to refresh his memory, counsel for the defendant expressly stated that he had no objection to such use of it. The facts disclosed by the paper were then given by the witness. Consequently the admission of the statement itself could do no possible harm to the defendant.

The ninth assignment relates to the exclusion of evidence offered by the defendant to show that on December 19, 1900, the bank received instructions from the Comptroller of the Currency that no dividends should be paid by the bank and that the instructions were not obeyed. This offer could not help the jury in determining whether the defendant aided the cashier to misapply the bank's funds.

The tenth assignment relates to the attempt of the defendant's counsel to cross-examine the cashier as to the items which made up the lump sums in the bank's account with the defendant which the cashier had spoken of in his direct examination. The court gave counsel the opportunity to examine the bank's books, with the cashier's aid, between the hour of adjournment of the court on the day when the cashier was testifying on this point and the hour of opening the court on the next day, and counsel expressed his satisfaction with that course.

The fourteenth, fifteenth, and sixteenth assignments relate to the action of the court in overruling the defendant's offer to show that, after having failed in business, the defendant had paid other creditors their claims. We find no error in any of these assignments.

The eighteenth, nineteenth, twentieth, twenty-first, twenty-second,

twenty-third, and twenty-sixth assignments relate to portions of the court's charge to the jury. The exceptions on which the eighteenth and nineteenth assignments are based are that the trial judge did not more fully charge the jury on certain points in the case; but no requests to charge on these points were made. These assignments are therefore overruled.

The twentieth assignment is based on exceptions that the trial judge in his charge said that the testimony of Bank Examiner Folds was corroborated by the cashier, that the judge declared that Folds had testified about a "manipulation of accounts," when, in fact, he had not done so, and that the judge had said to the jury, "You will say whether Mr. Folds, in his careful way, did or did not give us a correct result." Folds testified concerning the defendant's account in the bank's books and papers. The cashier testified concerning his transactions with the defendant. In a number of respects the testimony of the cashier corroborated that of Folds. There is nothing whatever in the portion of the charge objected to in this assignment concerning a "manipulation of accounts." And there was no impropriety in saying to the jury that they should decide whether Mr. Folds, "in his careful way," had given to the court a correct statement of the defendant's account.

The twenty-first assignment is based on three exceptions. One of them relates to what the court said about the effect of the statute of limitations. This point is not argued in the brief, and what was said by the judge was correct. Another of the exceptions is that the court failed to call the attention of the jury to the fact that the proceeds of certain notes discounted by the bank did not go to the credit of the defendant notwithstanding no request so to charge was made. The third exception was in this language:

"I also except to that portion of your honor's charge where you referred to a misunderstanding with respect to two accounts which the defendant furnished. One was an account beginning March 1st, and the other account was an account which was similar to the account which Mr. Folds prepared, and in the account which was similar to the one Mr. Folds prepared he assumed that Mr. Folds was right, and only supplemented it by two papers which are in evidence."

The court did not, in the language quoted in this assignment, refer to any misunderstanding whatever. He did refer to an account produced by the defendant, and he did state to the jury what credits he understood the defendant to claim by the account. The facts were complicated, and the judge told the jury regarding them, in express terms, that, if the defendant had established to their satisfaction that he had deposited within the period not barred by the statute of limitations more money then he had drawn out within the same period, there was no misapplication of the funds of the bank, and that the defendant could not be held guilty of having aided or abetted any misapplication. If there was any error in this statement, it was an error in favor of the defendant.

The twenty-second assignment relates to a portion of the judge's charge concerning the deposit with the bank by the defendant of certain worthless bonds of the Carrolton Coal Company as collateral se-

curity for certain of his notes, and as substitutes for certain of his overdraft checks which the bank had paid and was carrying as cash. It was not claimed by the government that the defendant received from the bank any moneys as the result of the bond transaction, nor do any of the counts of the indictment so charge. The evidence concerning the bond transaction was admitted only for the purpose of throwing light on the defendant's general course of business with the bank, and on the question of criminal intent as to the withdrawal of the funds of the bank mentioned in the indictment. For that purpose the evidence was competent. The defendant's transactions with the bank were large, amounting probably to hundreds of thousands of dollars every year. What the judge said to the jury concerning the bond transaction related wholly to the question of intent, and he closed what he had to say on this branch of the case with the express statement that it was for the jury to say whether the bond transaction threw any light upon the question of intent.

The twenty-third assignment relates to a portion of the judge's charge concerning a statement presented on the trial by Bank Examiner Folds showing the moneys actually deposited by the defendant in the bank, and the moneys actually paid out by the bank on the defendant's checks, after April 10, 1906. Concerning the statement, Mr. Folds said:

"The amount of money received by the bank on all deposits of Mr. Hillegass between the close of business April 10, 1906, and the closing of the bank, on good checks or cash deposited in Merchants', amounts to $139,458.12. The amount of money paid out directly to Mr. Hillegass, or to other persons on his checks, not including reduction on notes, old items credited to his account prior to that date that came back unpaid after April 10th, and without including the protest fees paid out for the bank on the protested items—excluding all those items, simply taking money actually paid on his checks—amounted to $148,919.17, or an increase in his overdrafts of $9,461.05."

The defendant contends that he is entitled to credits not given him in the Folds statement, to the amount of $12,207.07 for notes of good parties delivered by him to the bank after April 10, 1906, which were accepted and discounted by the bank and subsequently paid by the makers thereof. Had these credits been given, he argues that the statement would not have shown any overdrafts after April 10, 1906. It appears, however, by the evidence of the defendant himself that the proceeds of these notes were applied to the reduction of the defendant's overdue paper and to the payment of at least a part of his old overdraft checks. It also appears in evidence that the bank was carrying as cash on April 10, 1906, over $3,500 of the defendant's overdraft checks. Whenever, after that date, the defendant deposited a sum of money to the credit of his account, it was the plain duty of the bank, until the deposits amounted to the sum of $3,500, to take out of its cash from time to time enough of the overdraft checks to balance the deposits and to charge those checks against the defendant in his account. And as to the part of the proceeds of the notes for $12,207.07 that was applied in reduction of the defendant's indebtedness on overdue paper, it was likewise the plain duty of the bank to make such application. Therefore, if the credits which the defendant

claims should be given to him in the Folds statement, he should also be charged therein with the same sums precisely as if he had actually given his checks after April 10, 1906, to the bank to pay the overdraft checks and the sums applied in reduction of his indebtedness on overdue paper. By either of the two methods of stating the account, the result is the same. In view of this fact, the objection to the part of the charge quoted in the twenty-third assignment is not sound.

The twenty-sixth assignment is too general, and the defendant's counsel concedes, in his brief, that it is covered by his argument on the other assignments.

All the other assignments were abandoned on the argument, and therefore need not be referred to.

We find no error in the record, and the judgment of the District Court is affirmed, with costs.