## ANDERSON et al. v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit.  May 12, 1921.)

Nos. 5670–5695.

1. **Conspiracy ⚖==34—Elements of conspiracy to forcibly prevent execution of laws.**

The offense of conspiracy "by force to prevent, hinder or delay the execution of any law of the United States" is not committed by concert in setting the law itself at defiance, but the purpose of the conspiracy must be forcible resistance to the authority of the United States while endeavoring to carry the law into execution.

⚖==For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied June 16, 1921.

2. **Conspiracy ☞43(5)—Allegations of overt acts in indictment may be considered as explanatory of charge.**

While a charge of conspiracy cannot be aided by averments of acts done in furtherance of it, averments of overt acts in an indictment for conspiracy, not elements of the offense under the statute, may be looked to as explanatory of the charge.

3. **Conspiracy ☞43(11)—Indictment for conspiracy by force to prevent execution of laws of United States held insufficient.**

An indictment under Criminal Code § 6 (Comp. St. § 10170), for conspiracy by force to prevent, hinder, or delay the execution of laws of the United States, *held* insufficient to charge the offense defined by the statute.

4. **Indictment and information ☞130—Counts in indictment for conspiracy under different statutes held properly joined.**

Counts charging conspiracies under Criminal Code, § 37 (Comp. St. § 10201), under Espionage Act June 15, 1917, tit. 1, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212d), and under Lever Act Aug. 10, 1917, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛i), being for the same class of offenses, *held* properly joined in one indictment, under Rev. St. 1024 (Comp. St. § 1690).

5. **Indictment and information ☞125(5½)—Count not duplicitous for charging conspiracy to commit different offenses.**

A count in an indictment for conspiracy is not duplicitous because it charges the object of the conspiracy to have been to commit more than one offense against the United States.

6. **Indictment and information ☞10—That improper evidence was presented to grand jury not ground for setting aside.**

An indictment cannot be set aside on the ground that evidence unlawfully obtained was used before the grand jury unless it affirmatively appears that there was no lawful evidence presented on which it could have been based.

7. **Criminal law ☞395—Documents of association may be used as evidence against member.**

The constitutional protection of a defendant from the use as evidence against him of papers or documents unlawfully seized from his person or possession does not apply to papers or documents of an association of which he is a member, used in the perpetration of criminal offenses with which he is charged, and which were not taken from his possession, but from that of the association.

8. **Criminal law ☞1149—Ruling on demurrer not assignable as error.**

It is the general rule that the action of a trial court in overruling a motion to quash or demurrer to an indictment is not assignable as error.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Criminal prosecution by the United States against C. W. Anderson and 25 others. Judgment of conviction, and defendants separately bring error. Reversed in part, and affirmed in part.

Otto Christensen, of Chicago, Ill., for plaintiffs in error.

S. B. Amidon, Sp. Asst. Atty. Gen., of Wichita, Kan., and L. S. Harvey, Asst. U. S. Atty., of Kansas City, Kan. (Fred Robertson, U. S. Atty., of Kansas City, Kan., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge. The twenty-six plaintiffs in error were tried convicted and sentenced on four counts of an indictment charging them with criminal conspiracies. The proceedings at the trial are not in the record, and the only action of the trial court which we are asked to consider is its orders overruling a demurrer and motion to quash, which challenged the sufficiency of each count. The indictment covers thirty-two pages of the record; the motion to quash, with attached exhibits and affidavits in support, the answer thereto, traversing the facts set up, with exhibits attached and affidavits in support of the answer, cover forty pages of the record; and the demurrer twenty pages. The demurrer embodies every conceivable criticism, duplicity, repugnancy and surplusage as to each count, that the counts could not properly be joined in one bill, that none of them charges the commission of a crime in violation of the laws of the United States, that as to each count the court was without jurisdiction, that each count is too vague, indefinite and uncertain to advise the defendants of the offenses for which they are to be put on trial. It descends to particulars in criticism of words, phrases and sentences in each count, for instance, that it cannot be ascertained in what sense the word "unlawful" is used, whether unlawful under municipal, state, federal or international law. It embodies more than one hundred grounds of alleged insufficiency of each and all of the counts. The motion to quash attacks the validity of the proceedings before the grand jury which returned the bill, and includes also some of the broader grounds of objection set up in the demurrer.

A full consideration of the first count will not only enable us to determine whether the court erred in sustaining it as good, but will also go far in solving the same inquiry as to the other three counts. We proceed, then, to set out the substance of the first charge. It is based on that part of Section 6 of the Criminal Code which reads: "If two or more persons conspire by force to prevent, hinder or delay the execution of any law of the United States" (Comp. St. § 10170) they shall be punished as in the section stated. It charges that the twenty-six plaintiffs in error entered into a conspiracy with twelve other named persons, and with divers others to the grand jurors unknown, "by force to prevent, hinder and delay, in violation of Section 6 of the Penal Code of the United States, the execution of certain laws of the United States, to wit." The laws of the United States, execution of which the conspiracy was formed to prevent, hinder and delay by force, are set out by appropriate references, and are these:

1. The Resolution of April 6, 1917, declaring a state of war between the United States and the Imperial German Government (40 Stat. 1).

2. The Proclamation and Regulations of the President of the same date, governing the conduct, treatment and disposition of alien enemies, made pursuant to Sections 4067, 4068, 4069, 4070, R. S. U. S. (40 Stat. Vol. 2, 1650).

3. Act of Congress May 18, 1917, entitled: "An Act to Authorize the President to increase temporarily the military establishment of the United States," the Proclamation of the President of May 18,

1917, fixing time for registration under the Act, the registration regulations prescribed by the President, and the rules and regulations for local and district boards prescribed by the President June 30, 1917, under the Act (40 Stat. 76).

4. Act of Congress July 24, 1917, entitled: "An Act to authorize the President to increase temporarily the Signal Corps of the army," etc. (40 Stat. 243 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 1867f–1867o]).

5. Act of Congress August 10, 1917, entitled, "An Act to provide further for the national security and defense," etc. (40 Stat. 276 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛c–3115⅛v]).

6. And Sections 4, 37, 42, 43, 135 and 136 of the Criminal Code (35 Stat. 1088 [Comp. St. §§ 10168, 10201, 10206, 10207, 10305, 10306]).

Although Section 6 does not require an overt act as an element of the crime which it denounces, the first count sets forth twenty alleged overt acts committed by the defendants and their co-conspirators "in and for executing said unlawful and felonious conspiracy." These overt acts cover twenty-two pages of the printed record, and are followed by the usual formal conclusion that the grand jurors "do say that said defendants, and their said co-conspirators, during said period of time, at the place and in the manner and form aforesaid, unlawfully and feloniously have conspired by force to prevent, hinder and delay the execution of the laws of the United States," etc. It is charged that the conspiracy was formed and continued from April 6, 1917, to November 25, 1917, in Butler County, Kansas. Before summarizing the overt acts we direct attention to the opening charge, which covers three printed pages and precedes the charge proper by way of inducement or aggravation. It alleges that prior to April 6, 1917, and continuing thereafter, there existed in the United States, and within the jurisdiction of the court, an organization of persons under the name of Industrial Workers of the World, commonly called "I. W. W." and "O. B. U.," that a portion of said organization was also known as "Agricultural Workers Industrial Union Number 400," "Agricultural Workers Organization of the I. W. W. Number 400," "Oil Workers Industrial Union Number 450", and "O. W. I. U. Number 450," that there were several thousand persons in said organization distributed in various parts of the United States, including Kansas and Oklahoma, many of them being laborers in different branches of industry necessary to the existence and welfare of the people and of the government, among others the transportation, oil, fuel, natural gas and farming industries, that defendants were members of said organization and were known as "militant members of the working class" and "rebels," holding various offices, employments and agencies therein, and that the special purpose of defendants within said organization was to prevent, hinder and delay the execution of the laws of the United States, that defendants were actively engaged in conducting the association and carrying out and propagating its principles by written, printed and verbal exhortations, and were and had been engaged in attempting to accomplish, and in part had accomplished, the

objects of the unlawful and felonious purposes of said Industrial Workers of the World. It is further alleged that said organization was for the assumed purpose of advancing the interests of laborers as a class; that they sought the complete ownership and control of all property and the means of producing and distributing property, through the abolition of all other classes of society; that they call all who are not members of their organization "capitalists," "the master class," "the ruling class," "exploiters of the workers," "bourgeois," and "parasites"; that their purpose was to abolish all other classes by the continual and persistent use and employment of unlawful, criminal and forcible means and methods, involving threats, assaults, injuries, intimidations, arson, murders, and injury to and destruction of property by the practice of "sabotage," "direct action," "working on the job," "wearing the wooden shoe," "working the scab-cat," and "slowing-down tactics," also forcible resistance to the execution of all laws of the United States, and finally forcible revolutionary overthrow of all existing governmental authority in the United States; that these means and methods were to be resorted to in local industrial and general strikes of laborers, and in disregard of the right of the United States to execute its laws, and with the especial and particular design of seizing the opportunity presented due to the necessity of the United States expeditiously and successfully carrying on its war with the Imperial German Government, well knowing that in so doing the necessary effect would be to hinder and delay, and in part prevent the execution of the laws of the United States, and thereby they proposed to limit the facilities for transporting, producing, manufacturing, storing and dealing in necessaries, especially fuel, oil, natural gas, food and farm products, to restrict the supply of such necessaries and to restrict their distribution, all of which were required and necessary for the successful prosecution of the war and the support and maintenance of the army and navy; that one of the purposes of said organization was to discourage, obstruct and prevent the prosecution of said war by the United States and the execution of its laws for so doing, by advising, counselling and procuring members of said organization available for duty in the military and naval forces to fail to register, to fail and refuse to enlist for military service, and by inciting other persons not members of the organization so to do,—and this was to be accomplished by use of all of the methods aforesaid, and as a forcible means of preventing, hindering and delaying the execution of said laws of the United States, and to forcibly conceal and rescue members from said military and naval forces.

Referring now to the overt acts,—the first charges some of the conspirators, naming them, with causing to be printed in a newspaper called "Solidarity," of date September 1, 1917, at Chicago, what is entitled, "Preamble Industrial Workers of the World." The preamble is set out. It recites a conflict between the working class and the employing class, it urges the abolition of the wage system and that the working class take possession of the earth and the machinery of production, it advocates strikes to accomplish the end, and that the la-

boring class organize to overthrow capitalism, and it is then alleged that some of the conspirators circulated the paper containing the preamble in the district of Kansas.

The second overt act charges that one of the conspirators distributed and gave out this paper within the district.

The third charges that the defendants, from April 6 to November 20, 1917, distributed, circulated and read within the district a book by Emile Pouget, entitled "Sabotage," and then quotes a number of extracts from the book which advocate the temporary disabling, but not destruction, of machinery, denominating such action as "the chloroforming of the organism of production, the 'knockout drops,'" that a little sand or emery powder in the gear of machinery will render it palsied and useless.

The fourth overt act charges that the defendants, between April 6 and November 20, 1917, distributed, circulated and caused to be read within the district a book entitled "I. W. W. Songs to Fan the Flames of Discontent," which book contained the preamble set out in the first overt act, and it then sets forth the words of the songs, the first being a glorification of the red flag, the second advocates destruction or putting out of operation farm machinery, unless a demand for higher wages and shorter hours is conceded, the third is of like import, and the fourth portrays the horrors of war.

The fifth overt act charges the distribution during the time named, within the district, of a book or pamphlet entitled "Sabotage, its History, Philosophy and Function, Walter C. Smith," followed by many quoted passages of the character already noted.

The sixth charges the distribution and circulation in Butler County during the time stated of a newspaper, "Solidarity," of issue July 28, 1917, containing an article condemning the war and giving notice that any member of the organization who joined the military forces would be expelled.

The seventh charges the publication of a song, the words of which are set out, and the sentiment of which is not to enlist for military or naval service, published in a newspaper, "Industrial Worker," of April 14, 1917, at Seattle, Washington, and circulated in Butler County within the time stated.

The thirteen remaining overt acts are either like those already mentioned or else correspondence between the conspirators in reference to the organization to which they belong and its activities, and the efforts being made to increase its membership in the Kansas and Oklahoma oil-producing territory. They need not be noticed in detail.

[1] With this general statement, but complete enough in detail for a correct determination of the issues raised by the motion and demurrer to the first count, we are brought to a consideration of the question as to whether that count charges a commission of the offense denounced by Section 6. The elements of that offense are definitely stated in Baldwin v. Franks, 120 U. S. 678, 7 Sup. Ct. 656, 32 L. Ed. 766; in which the part of Section 6 above quoted was under consideration, and it was said:

"The offense consists in preventing, hindering, or delaying the government of the United States in the execution of its laws. This, as well as the other (other parts of Section 6), means something more than setting the laws themselves at defiance. There must be a forcible resistance of the authority of the United States while endeavoring to carry the laws into execution. The United States are bound by their treaty with China to exert their power to devise measures to guard the subjects of that government lawfully residing within the territory of the United States against ill treatment, and if in their efforts to carry the treaty into effect they had been forcibly opposed by persons who had conspired for that purpose, a state of things contemplated by the statute would have arisen."

[2, 3] There must, therefore, be found in the first count a charge that the purpose of the conspiracy was the exertion of force against those charged with the duty of executing the laws of the United States, or the language used in the count must be such that from it the inference reasonably follows that that was the purpose and object of the conspiracy; and unless the count can be so construed it is bad and fails to charge the offense. Inasmuch as overt acts are not elements of the offense, are not required to be plead, and the crime defined does not stand in abeyance or suspense until an overt act has been committed, we may look to them as explanatory of the charge against the defendants. In doing so we do not mean to in any way qualify the rule laid down in U. S. v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698, and the cases following it in the Supreme Court and this Court, that a charge of conspiracy cannot be aided by averments of acts done in furtherance of it. This Court has held that they may be viewed in that aspect. Smith v. U. S., 157 Fed. 721, 725, 85 C. C. A. 353. And in determining the scope and meaning of the statement of the charge, we are of opinion that the inducement bears diectly upon the inquiry as to whether the charge includes the force required by the statute as an element of the offense. This rule prevails here as to overt acts under statutes which require them to be pleaded and proved. Stearns v. U. S., 152 Fed. 900, 904, 82 C. C. A. 48. And for like reasons facts plead in aggravation should be looked to in determining the meaning and effect to be given to the charge proper when it be at all in doubt. The necessity for this arises from the fact that we have searched the count for a charge of the requisite force to prevent, hinder or delay the execution of a law of the United States as an element of the conspiracy and have failed to find it. It goes no further in that direction than to use the general words found in the section. If matters plead in aggravation and as overt acts were put out of view, and the remainder of the charge in the short words of the statute were alone considered, the inquiry would be whether that constitutes a good charge, but it cannot be brought down to that basis for consideration. Because, viewing the count as a whole, including inducement and alleged overt acts, we find that it specifically charges the intended employment of force. That force was to be exerted, not against those whose duty it should be to execute the laws, and while attempting to do so, but its application was to be made against industrial and commercial activities and interests by lawless acts during strikes for the purpose of accomplishing alleged socialistic ends in the

overthrow and destruction of the present civil compact. Inasmuch as this count not only fails to charge the intended use of the requisite force as an element of the conspiracy, but specifically charges that a force was to be exerted in a manner and for a purpose not within the statute, it negatives any inference that might be indulged from the use of the bare statutory words that the prohibited force inheres in the charge. Furthermore, there is extreme doubt and perplexity in the conception that the force contemplated under Section 6 could be at all used to prevent or delay the execution of many of the laws pointed out in the charge and named as the laws the execution of which the conspiracy was formed to prevent. We are, therefore, of opinion that when the entire count is considered, the only reasonable conclusion that can be reached is that it wholly fails to charge an offense under Section 6, and that the objections to it were good and should have been sustained.

The second count is based on Section 37 of the Criminal Code, and charges that the defendants entered into a conspiracy which continued to exist in Butler County, Kansas, from May 18 to November 25, 1917, to commit divers and various offenses against the United States, in aiding, abetting, counselling, commanding, inducing and procuring many male persons who were subject to duty in the military and naval service under the Act of May 18, 1917 (40 Stat. 76), to fail and refuse to present themselves for registration for such duties as required by the Act, and to induce others who were in the service to desert. The alleged overt acts stated in the first count are by reference made overt acts in this count.

The third count is based on Sections 3 and 4 of Title 1, Act of June 15, 1917 (40 Stat. 217 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212c, 10212d]). It charges that the defendants entered into a conspiracy which continued from June 15 to November 25, 1917, in Butler County, Kansas, to commit an offense against the United States, that is, to cause or attempt to cause insubordination, disloyalty and refusal of duty in the military and naval forces of the United States when the United States was at war; and that this was to be done by means of personal solicitation, by speeches, and by articles printed in newspapers and pamphlets and distributed throughout the district. It was further charged in this count that another object and purpose of the conspiracy was to use the same means to obstruct recruiting and enlistment in the service of the United States when it was at war, to the injury of the service and of the United States; and by reference the alleged overt acts in the first count are made overt acts in this count.

The fourth count is based on Sections 4 and 9 of the Act of August 10, 1917 (40 Stat. 276). It charges that the defendants entered into a conspiracy which continued from August 10 to November 25, 1917, in Butler County, to limit the facilities for transporting, producing, manufacturing, supplying, storing and dealing in necessaries, including fuel, oil, natural gas, food and farm products, and to restrict the supply and distribution of those necessaries; that this conspiracy was to be carried out by causing and inducing local and general in-

dustrial strikes of laborers engaged in those industries and by the practice of "sabotage," "direct action," "working on the job," "wearing the wooden shoe," and by various other means advocated and employed by the organization known as the Industrial Workers of the World. The overt acts set up in the first count are by reference made overt acts under this count.

[4] It is objected that these three counts cannot be joined in one indictment. Each count charges a conspiracy to commit one or more offenses against the United States. They all belong to the same class of crimes, and under the clear terms of the statute may be joined. R. S. U. S. § 1024 (Comp. St. § 1690); Pointer v. U. S., 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208; Gardes v. U. S., 87 Fed. 172, 30 C. C. A. 596; Chadwick v. U. S., 141 Fed. 225, 72 C. C. A. 343; Hartman v. U. S., 168 Fed. 30, 94 C. C. A. 124.

[5] It is also claimed that each count is duplicitous because the object and purpose of the conspiracy charged in each was the commission of more than one offense against the United States. This is also without merit. Frohwerk v. U. S., 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. 561; Brewing Co. v. U. S., 206 Fed. 386, 124 C. C. A. 268; Knauer v. U. S., 237 Fed. 8, 150 C. C. A. 210; Knoell v. U. S., 239 Fed. 16, 152 C. C. A. 66.

The motion to quash embodies some of the objections raised by the demurrer, but its principal ground, which is relied upon here, relates to matters that do not appear upon the face of the indictment and should have been brought forward by plea in abatement rather than by motion; nevertheless, we will consider the objection which it raises without regard to form. It sets out:

"That there was submitted to and considered by the grand jury, which returned said indictment, and said indictment as against these defendants is largely founded upon letters and papers and documents unlawfully taken from either the person of the various defendants * * * or from the places of residence of said defendants * * * and constituted a part, if not all, of the testimony submitted to said grand jury, and was a part of, if not the entire, evidence upon which the grand jury returned the indictment herein."

Before the motion was filed the defendants had presented to the court a petition for the return of the papers referred to in the motion, and that petition is attached to the motion as an exhibit. And in support there are a large number of affidavits setting forth that the papers in controversy were taken from the custody of some of the defendants under search warrants alleged to have been void, that some were taken from the persons of some of the defendants at the time they were put under arrest, and that some perhaps were taken from premises which some of them occupied, without any warrant therefor. The district attorney filed a verified answer to the motion to quash, in which it is alleged that none of the defendants or their counsel who made affidavits in support of the petition for the return of the papers appeared before the grand jury, or at any time had access to the facts which were considered by the grand jury, that the indictment was not founded in any manner upon personal and private letters, papers and documents unlawfully taken from the defendants

and no such papers were used as evidence before the grand jury, that on hearing the petition for return of the papers the court ordered that all of the private papers taken from the defendants should be returned to them and that they were returned, and that none of the papers so returned were introduced before the grand jury. The answer to the petition for the return of the papers, filed by the district attorney, was attached to the motion to quash as an exhibit, and likewise the affidavits which had been made in support of that answer. From these it appears that a very large amount of papers, pamphlets and letters deposited, some in a large tent and some in a building nearby, were seized under search warrants which appear to be regular on their face. The tent and building nearby are said to have been the headquarters of the I. W. W., that these papers, letters, etc., were not personal to any of the defendants but in a sense of an official character, relating to the purpose and activities of the I. W. W., and were criminal instruments to be used for the purpose of accomplishing the crimes charged in the indictment. It was also disclosed in the affidavits presented by the district attorney that he had in hand papers and documents that had been used on the trial of a similar case at Chicago, later taken to the Court of Appeals in that circuit (Haywood v. U. S., 268 Fed. 795), and which had been transmitted to him under an order of the latter court for use in the trial of this cause.

[8] It is not directly admitted that any of the papers referred to were used before the grand jury in obtaining this indictment, but that fact is inferable. But after an examination and careful reading of the showing made pro and con it cannot be said that the papers referred to in the motion and those received from the court in the seventh circuit constituted all of the evidence presented to the grand jury. The motion does not so claim. There may have been other sufficient and competent evidence supporting the action of the grand jury in finding the indictment. It therefore becomes, as we think, unnecessary to decide the question as to whether the seized papers could appropriately be used at the inquest. We understand the rule to be that an indictment cannot be set aside or avoided on such an objection unless it affirmatively appear that there was no evidence of the commission of the offenses presented to the grand jury, or unless all of the evidence which it heard on the inquiry was unlawfully procured in violation of some fundamental right of the party indicted, and which would be barred on the trial as incompetent and inadmissible against him. This court has so decided in McKinney v. U. S., 199 Fed. 25, 117 C. C. A. 403. The Supreme Court also. Holt v. U. S., 218 U. S. 245, 248, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138. And that is the general rule. Chadwick v. U. S., 141 Fed. 225, 72 C. C. A. 343; McGregor v. U. S., 134 Fed. 187, 69 C. C. A. 477; Radford v. U. S., 129 Fed. 49, 63 C. C. A. 491; Hillman v. U. S., 192 Fed. 264, 112 C. C. A. 522. See, also, State v. Shreve, 137 Mo. 1, 38 S. W. 548; People v. Lauder, 82 Mich. 109, 46 N. W. 956; State v. Dayton, 23 N. J. Law, 49, 53 Am. Dec. 270; Stewart v. State, 24 Ind. 142; State v. Fasset, 16 Conn. 457; Agee v. State, 117 Ala. 169, 23 South. 486.

[7] But on the merits of the application for return of the papers and documents which the court by its order permitted the district attorney to hold, we are not convinced there was error. The court may have been of the opinion that they were not the property of any of the defendants, and they belonged to the organization of which defendants were members, that they were criminal instruments prepared for the sole purpose of being used to perpetrate the crimes with which defendants were charged, that they were lawfully seized and that they could be lawfully used before both grand and petit juries without violating any rights of the defendants. There is proof that would sustain such a conclusion, and authority in support. Wheeler v. U. S., 226 U. S. 478, 490, 33 Sup. Ct. 158, 57 L. Ed. 309; Schenck v. U. S., 249 U. S. 47, 49, 39 Sup. Ct. 247, 63 L. Ed. 470; Welsh v. U. S. (C. C. A.) 267 Fed. 819; Haywood v. U. S., supra.

[8] We have given this consideration to the merits of the questions raised by the motion and demurrer notwithstanding it is the general rule that the action of the trial court in overruling them is not assignable as error. Durland v. U. S., 161 U. S. 306, 314, 16 Sup. Ct. 508, 40 L. Ed. 709; Hillegas v. U. S., 183 Fed. 199, 105 C. C. A. 631; Chadwick v. U. S., supra; McGregor v. U. S., supra; Steigman v. U. S., 220 Fed. 63, 135 C. C. A. 131; Endleman v. U. S., 86 Fed. 456, 30 C. C. A. 186; Carlisle v. U. S., 194 Fed. 827, 114 C. C. A. 531.

Other objections raised to the three counts have also been examined and considered, but we think them without merit. We are of opinion that the first count is bad and that the court erred in holding it good; and that the court did not err in overruling the motion and demurrer to the second, third and fourth counts. The judgments entered against all of the plaintiffs in error on the first count are reversed, with direction to set aside the verdicts, judgments and sentences on that count, and the judgments and sentences on the three remaining counts are affirmed.